**Larry CLEMMONS, Respondent,**

v.

**KANSAS CITY CHIEFS FOOTBALL CLUB, INC., Appellant.**

**No. WD 75329.**

Missouri Court of Appeals, Western District.

Feb. 26, 2013.

Application for Transfer to Supreme Court Denied March 26, 2013.

Application for Transfer Denied May 28, 2013.

Rachel H. Baker and Heidi V. Anderson, Kansas City, MO, for Appellant.

Gene P. Graham and Deborah J. Blakely, Independence, MO, for Respondent.

John E. Hall, Washington, DC, for Amicus Curiae.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

LISA WHITE HARDWICK, Judge.

The Kansas City Chiefs Football Club, Inc. ("Chiefs"), appeal the circuit court's denial of their motion to compel a former employee, Larry Clemmons, to arbitrate his age discrimination claim against them. The Chiefs contend that a document Clemmons signed during his third year of employment is a legally enforceable arbitration agreement. For reasons explained herein, we affirm the court's denial of the motion to compel arbitration.

FACTUAL AND PROCEDURAL HISTORY

Clemmons began working for the Chiefs as an at-will employee on October 23, 1972. In November 1974, a payroll clerk presented the following document to Clemmons and told him that he had to sign it to continue his employment with the Chiefs:

*AGREEMENT*

In consideration of my employment by Kansas City Chiefs Football Club, Inc., (hereinafter "the Club"); I hereby agree to comply at all times with, and to be bound by, the Constitution and By–Laws of the National Football League ("the League"), in their present form and as amended from time to time hereafter, and the decisions of the Commissioner of the League. I agree that all matters in dispute between me and the Club shall be referred to the Commissioner, and that his decision shall be accepted as final, binding and conclusive on me and on the Club. I further agree to fully release and discharge the Commissioner, the League, each Club in the League and each owner, officer, employee or agent thereof, and each official, employee or agent of the League, and all of them, in their individual and representative capacities, from any and all claims, demands, actions and/or causes of action arising out of or in any way connected with or related to any decision or the Commissioner (whether in connection with a dispute between me and the club or otherwise) that involves or in any way affects me, except to the extent of awards made to me by the Commissioner.

Clemmons and the payroll clerk, as a witness, signed below the Agreement.

Clemmons was employed for thirty-eight years until the Chiefs terminated him in May 2011. At that time, he was sixty years old and held the position of controller. Clemmons subsequently filed a charge of age discrimination against the Chiefs with the Missouri Human Rights Commission. After the Commission issued him a "right to sue" letter, Clemmons filed a petition in the circuit court alleging claims of age discrimination and retaliation against the Chiefs.

The Chiefs filed a motion to stay litigation and compel arbitration. The motion alleged that the Agreement Clemmons signed during his third year of employment constituted a binding arbitration agreement. Clemmons opposed the motion, arguing that the Agreement was not a valid and enforceable contract to arbitrate. Following a hearing, the court entered an order denying the Chiefs' motion to compel arbitration. The Chiefs appeal.[1]

STANDARD OF REVIEW

Whether or not arbitration is properly compelled is a question of law that we review *de novo*. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 21 (Mo. App.2008). Upon such review, we must first determine whether a valid arbitration agreement exists. *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). If it does, we next determine "whether the specific dispute falls within the scope of the arbitration agreement." *Id.* Lastly, if there is a valid arbitration agreement and the dispute is within the scope of the agreement, "we must then determine whether the arbitration agreement is subject to revocation under applicable contract principles." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429,

---

1. An order denying a motion to compel arbitration is appealable pursuant to Section

435.440.1(1), RSMo 2000.

435 (Mo.App.2010). "'In making these determinations, [we] should apply the usual rules of state contract law and canons of contract interpretation.'" *Id.* (quoting *Nitro,* 194 S.W.3d at 345). If the circuit court's ruling on the motion to compel arbitration contains factual findings that bear on the existence, scope, or revocability of the arbitration agreement, then we will affirm the factual findings if they are supported by substantial evidence and are not against the weight of the evidence. *Whitworth v. McBride & Son Homes, Inc.,* 344 S.W.3d 730, 736 (Mo.App.2011). The Chiefs, as the party seeking to compel arbitration, had the burden of proving the existence of a valid and enforceable arbitration agreement. *Id.* at 737.

### ANALYSIS

In their sole point on appeal, the Chiefs contend that the Agreement Clemmons signed is valid and enforceable because it contains all of the required elements of an arbitration contract. "Missouri substantive law governs whether a valid arbitration contract exists." *Id.* An arbitration agreement is not valid "unless it reflects the essential contract elements required under Missouri law." *Id.* The essential elements of a contract are "'offer, acceptance, and bargained for consideration.'" *Id.* (quoting *Johnson v. McDonnell Douglas Corp.,* 745 S.W.2d 661, 662 (Mo. banc 1988)). Consideration "consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Morrow,* 273 S.W.3d at 25. The Chiefs assert that the Agreement is supported by two forms of consideration: their mutual promise to arbitrate and their offer of continued at-will employment to Clemmons.

### *Mutual Promise to Arbitrate*

The Chiefs first contend that the Agreement is supported by their mutual promise to arbitrate any disputes they may have had against Clemmons and to be bound by the Commissioner's decision. "It is an elemental principle of contract law that a contract 'that contains mutual promises imposing some legal duty or liability on each promisor is supported by sufficient consideration to form a valid, enforceable contract.'" *Frye,* 321 S.W.3d at 438 (citation omitted). Therefore, if a contract contains mutual promises imposing a legal duty or liability "on each party as a promisor to the other party as a promise, the contract is a bilateral contract supported by sufficient consideration." *Id.*

The Chiefs assert that the Agreement contains their mutual promise to submit to binding arbitration any claims they may have had against Clemmons. Specifically, they rely upon the second sentence of the Agreement, which states: "I agree that all matters in dispute between me and the Club shall be referred to the Commissioner, and that his decision shall be accepted as final, binding and conclusive on me and the Club." The Chiefs argue that the reference to "all matters in dispute between me and the Club" required them to arbitrate any claims they might have had against Clemmons.

The Chiefs' interpretation is contrary to the plain language of the Agreement. All three sentences of the Agreement contain promises made only by Clemmons. Only Clemmons agreed to comply at all times with and be bound by the constitution and bylaws of the National Football League ("NFL"); only Clemmons agreed that all matters in dispute should be referred to the Commissioner for a binding and conclusive decision; and only Clemmons agreed to release the various listed parties upon the Commissioner's decision. Nowhere did "the Club," i.e., the Chiefs, agree to do anything. Essentially, the Chiefs are asking us to find that Clem-

mons could bind the Chiefs, by his signature, to the same promises he made in the Agreement. The plain language of the Agreement contains no promises by the Chiefs.

Nevertheless, the Chiefs and the NFL, as *amicus curiae* for the Chiefs, assert that the Chiefs' mutual promise to arbitrate is evidenced by the fact that the NFL's constitution and bylaws required them to arbitrate all disputes with their employees, and the constitution and bylaws were incorporated by reference into the Agreement. The mere mention of the NFL's constitution and bylaws in the Agreement, however, did not incorporate the terms of those documents into the Agreement. See *Dunn Indus. Group, Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 436 (Mo. banc 2003).

Moreover, as noted *supra,* only Clemmons promised to comply and be bound by the NFL's constitution and bylaws. While the Chiefs' relationship with the NFL may have required them to comply with the NFL's constitution and bylaws, nowhere in the Agreement did the Chiefs promise Clemmons that, in the context of their employment relationship with him, they would comply with the arbitration provision or any other provision in the NFL's constitution and bylaws. Indeed, if the NFL had amended its constitution and bylaws to eliminate the arbitration provision, there is nothing in the plain language of the Agreement that would have required the Chiefs to arbitrate any dispute it might have had with Clemmons. The Agreement does not contain any mutual promises by the Chiefs that constitute sufficient consideration for Clemmons's promise to forgo his right of access to the courts and arbitrate his claims against them.

***Offer of Continued At–Will Employment***

■ The Chiefs next contend that Clemmons's promise to arbitrate was made in exchange for their offer of continued at-will employment. They note that Clemmons remained an employee of the Chiefs for thirty-five years after signing the Agreement. Thus, the Chiefs argue that this shows that "the parties' mutual promises for continued employment were performed."

It is clear, however, that any alleged promise of continued employment was illusory and invalid consideration for a contractual agreement. Clemmons's act of signing the Agreement did not alter the nature of his at-will employment relationship. Because the Chiefs did not give Clemmons an express duration for his employment or place limitations on his discharge, no employment contract was created. *Morrow,* 273 S.W.3d at 26. His employment was still "terminable at the will of either party, on a moment-by-moment basis," for any or no reason. *Id.* The Chiefs could have fired Clemmons fifteen minutes after he signed the Agreement without suffering any legal consequences because his employment remained at-will. *Id.* at 27; *Grimm v. Arctic Slope Reg'l Corp.,* No. 09–4186–CV–C–SOW, 2011 WL 7109331 at *11 (W.D.Mo. Mar. 2, 2011).

■ Additionally, we reject the Chiefs' argument that, after Clemmons signed the Agreement, the work that he was then allowed to do for the next thirty-five years constituted consideration for the Agreement. See *Morrow,* 273 S.W.3d at 27. A contract cannot be formed in retrospect. *Id.* A meeting of the minds must occur at the time the purported contract is formed. *Id.* Continued employment was neither promised nor received at the time the alleged contract to arbitrate was formed. *Id.* Consequently, the Chiefs' offer of continued at-will employment to Clemmons was not sufficient consideration to support

his promise to arbitrate. *Whitworth,* 344 S.W.3d at 741; *Frye,* 321 S.W.3d at 438–39; *Morrow,* 273 S.W.3d at 26–27.

Clemmons's at-will employment with the Chiefs was not a legally enforceable employment relationship, so any terms and conditions placed on his employment were not enforceable at law as contractual duties. *Morrow,* 273 S.W.3d at 26. Clemmons's signing the Agreement was a term or condition of his employment with the Chiefs. When his employment with the Chiefs ended, his obligation to fulfill the terms and conditions of that employment, including his promise to arbitrate any disputes between him and the Chiefs, also ended. *Id.*

Because the Chiefs did not prove that the Agreement was supported by consideration, they failed to establish the existence of a valid and enforceable arbitration contract.[2] As this ruling is dispositive of the appeal, we need not address the Chiefs' additional arguments that the Agreement encompassed the present dispute and was not unconscionable.

## CONCLUSION

We affirm the circuit court's order denying the Chiefs' motion to compel arbitration.

All Concur.

2. We recognize that, in interpreting an almost identical arbitration agreement, the court in *Grant v. Philadelphia Eagles, LLC,* No. 09–1222, 2009 WL 1845231, at *5 (E.D.Pa. June 24, 2009), found that there was sufficient consideration in the form of continued employment to support the agreement. In that case, however, it appears that the continued employment was not at-will but was pursuant to an employment contract. *Id.* Additionally, one of the cases cited in *Grant* indicates that,

unlike in Missouri, continued employment, even if it is only at-will, "fulfills the consideration requirement under Pennsylvania law." *Id.* (citing *Gutman v. Baldwin Corp.,* No. 02–CV–7971, 2002 WL 32107938 (E.D.Pa. Nov. 22, 2002)). While the court in *Grant* also found that there was consideration in the form of the Eagles' mutual promise to be bound by arbitration, the court offered no explanation for this finding and did not discuss the agreement's plain language. *Id.*