**Brenda SNIEZEK, Respondent,**

**v.**

**KANSAS CITY CHIEFS FOOTBALL CLUB, Appellant,**

**National Football League, Amicus Curiae.**

**No. WD 75206.**

Missouri Court of Appeals, Western District.

Feb. 26, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 26, 2013.

Application for Transfer Denied May 28, 2013.

---

582

William T. Kilroy and William E. Quirk, Kansas City, MO and Jon R. Dedon, Overland Park, KS, for Appellant.

Dennis W. Egan, Kansas City, MO, for Respondent.

John Hall, Washington, DC, for Amicus Curiae.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

The Kansas City Chiefs Football Club, Inc., ("Chiefs") appeal the circuit court's denial of their motion to compel a former employee, Brenda Sniezek, to arbitrate her age discrimination claim against them. The Chiefs contend that a document Sniezek signed on her first day of work is a legally enforceable arbitration agreement. For reasons explained herein, we affirm

the court's denial of the motion to compel arbitration.

FACTUAL AND PROCEDURAL HISTORY

Sniezek completed an application for employment with the Chiefs on January 18, 1982, and began working for the organization as an at-will employee on March 8, 1982. On her first day of work, she was given a stack of documents and told to sign them. One of the documents stated:

### AGREEMENT

In consideration of my employment by Kansas City Chiefs Football Club, Inc., (hereinafter "the Club"); I hereby agree to comply at all times with, and to be bound by, the Constitution and By-Laws of the National Football League ("the League"), in their present form and as amended from time to time hereafter, and the decisions of the Commissioner of the League. I agree that all matters in dispute between me and the Club shall be referred to the Commissioner, and that his decision shall be accepted as final, binding and conclusive on me and on the Club. I further agree to fully release and discharge the Commissioner, the League, each Club in the League and each owner, officer, employee or agent thereof, and each official, employee or agent of the League, and all of them, in their individual and representative capacities, from any and all claims, demands, actions and/or causes of action arising out of or in any way connected with or related to any decision or the Commissioner (whether in connection with a dispute between me and the club or otherwise) that involves or in any way affects me, except to the extent of awards made to me by the Commissioner.

Sniezek and a witness signed below the Agreement.

Sniezek was employed for almost twenty-nine years until the Chiefs terminated her in January 2011. At that time, she was fifty-one years old and held the position of Community Relations Director. Sniezek subsequently filed a charge of age discrimination against the Chiefs with the Missouri Human Rights Commission. After the Commission issued her a "right to sue" letter, she filed a petition for damages against the Chiefs in the circuit court. Sniezek alleged that the Chiefs discriminated against her based upon her age in violation of the Missouri Human Rights Act.

The Chiefs filed a motion to compel arbitration. The motion alleged that the Agreement Sniezek signed on her first day of work constituted a binding arbitration contract. Sniezek opposed the motion, arguing that the Agreement was not a valid and enforceable contract to arbitrate. Following a hearing, the court entered an order denying the Chiefs' motion to compel arbitration. The Chiefs appeal.[1]

### STANDARD OF REVIEW

■■ Whether or not arbitration is properly compelled is a question of law that we review *de novo*. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 21 (Mo. App.2008). Upon such review, we must first determine whether a valid arbitration agreement exists. *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). If it does, we next determine "whether the specific dispute falls within the scope of the arbitration agreement." *Id.* Lastly, if there is a valid arbitration agreement and the dispute is within the scope of the agreement, "we must then determine whether the arbitration agreement is subject to revocation under appli-

cable contract principles." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 435 (Mo.App.2010). " 'In making these determinations, [we] should apply the usual rules of state contract law and canons of contract interpretation.' " *Id.* (quoting *Nitro*, 194 S.W.3d at 345). If the circuit court's ruling on the motion to compel arbitration contains factual findings that bear on the existence, scope, or revocability of the arbitration agreement, then we will affirm the factual findings if they are supported by substantial evidence and are not against the weight of the evidence. *Whitworth v. McBride & Son Homes, Inc.*, 344 S.W.3d 730, 736 (Mo.App.2011). The Chiefs, as the party seeking to compel arbitration, had the burden of proving the existence of a valid and enforceable arbitration agreement. *Id.* at 737.

### ANALYSIS

■■ In their first point on appeal, the Chiefs contend that the Agreement Sniezek signed is valid and enforceable because it contains all of the required elements of an arbitration contract. "Missouri substantive law governs whether a valid arbitration contract exists." *Id.* An arbitration agreement is not valid "unless it reflects the essential contract elements required under Missouri law." *Id.* The essential elements of a contract are " 'offer, acceptance, and bargained for consideration.' " *Id.* (quoting *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 662 (Mo. banc 1988)). Consideration "consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Morrow*, 273 S.W.3d at 25. The Chiefs assert that the Agreement is supported by two forms of consideration: their mutual prom-

---

1. An order denying a motion to compel arbitration is appealable pursuant to Section 435.440.1(1), RSMo 2000.

ise to arbitrate and their initial offer of at-will employment to Sniezek.

### Mutual Promise to Arbitrate

The Chiefs first contend that the Agreement is supported by their mutual promise to arbitrate any disputes they may have had against Sniezek and to be bound by the Commissioner's decision. "It is an elemental principle of contract law that a contract 'that contains mutual promises imposing some legal duty or liability on each promisor is supported by sufficient consideration to form a valid, enforceable contract.'" *Frye*, 321 S.W.3d at 438 (citation omitted). Therefore, if a contract contains mutual promises imposing a legal duty or liability "on each party as a promisor to the other party as a promise, the contract is a bilateral contract supported by sufficient consideration." *Id.*

The Chiefs assert that the Agreement contains their mutual promise to submit to binding arbitration any claims they may have had against Sniezek. Specifically, they rely upon the second sentence of the Agreement, which states: "I agree that all matters in dispute between me and the Club shall be referred to the Commissioner, and that his decision shall be accepted as final, binding and conclusive on me and the Club." The Chiefs argue that the reference to "all matters in dispute between me and the Club" required them to arbitrate any claims they might have had against Sniezek.

The Chiefs' interpretation is contrary to the plain language of the Agreement. All three sentences of the Agreement contain promises made only by Sniezek. Only Sniezek agreed to comply at all times with and be bound by the constitution and by-laws of the National Football League ("NFL"); only Sniezek agreed that all matters in dispute should be referred to the Commissioner for a binding and con-clusive decision; and only Sniezek agreed to release the various listed parties upon the Commissioner's decision. Nowhere did "the Club," i.e., the Chiefs, agree to do anything. Essentially, the Chiefs are asking us to find that Sniezek could bind the Chiefs, by her signature, to the same promises she made in the Agreement. The plain language of the Agreement contains no promises by the Chiefs.

Nevertheless, the Chiefs and the NFL, as *amicus curiae* for the Chiefs, assert that the Chiefs' mutual promise to arbitrate is evidenced by the fact that the NFL's constitution and bylaws required them to arbitrate all disputes with their employees, and the constitution and by-laws were incorporated by reference into the Agreement. The mere mention of the NFL's constitution and bylaws in the Agreement, however, did not incorporate the terms of those documents into the Agreement. See *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 436 (Mo. banc 2003).

Moreover, as noted *supra*, only Sniezek promised to comply and be bound by the NFL's constitution and bylaws. While the Chiefs' relationship with the NFL may have required them to comply with the NFL's constitution and bylaws, nowhere in the Agreement did the Chiefs promise Sniezek that, in the context of their employment relationship with her, they would comply with the arbitration provision or any other provision in the NFL's constitution and bylaws. Indeed, if the NFL had amended its constitution and bylaws to eliminate the arbitration provision, there is nothing in the plain language of the Agreement that would have required the Chiefs to arbitrate any dispute it might have had with Sniezek. The Agreement does not contain any mutual promises by the Chiefs that constitute sufficient consideration for Sniezek's promise to forgo her right of

access to the courts and arbitrate her claims against them.

### Initial Offer of At–Will Employment

 The Chiefs next contend that Sniezek's promise to arbitrate was made in exchange for their initial offer of at-will employment. They note that the Agreement expressly states, "In consideration of my employment by the Kansas City Chiefs Football Club ..., I hereby agree...." Additionally, they note that Sniezek admitted that the first thing she did on her first day of work was sign the Agreement along with the other documents presented to her. Thus, the Chiefs argue that their initial offer of employment to Sniezek was conditioned upon her entering into the arbitration contract and, accordingly, their offer constituted sufficient consideration for the contract.

 The record does not indicate, however, that the Chiefs even mentioned the Agreement to Sniezek when they offered her the job, much less conditioned their offer on her signing the Agreement. Indeed, there is no evidence that Sniezek was aware of the Agreement when she accepted the Chiefs' initial offer of employment. "[T]he fundamental concept of consideration is that the promise and the consideration must purport to be the motive each for the other." *Marzette v. Anheuser–Busch, Inc.*, 371 S.W.3d 49, 53 (Mo. App.2012) (internal quotation marks and citation omitted).

The record indicates that the Chiefs presented Sniezek with the Agreement *after* she accepted their initial offer and showed up for her first day of work. Hence, if Sniezek wanted to work for the Chiefs after they initially offered her the job, she accepted their offer, and she showed up for her first day of work, she had to sign the Agreement. Signing the Agreement was not a condition of the Chiefs' initial offer of at-will employment but, rather, was a condition of Sniezek's keeping the at-will employment that the Chiefs had already offered her and she had already accepted.

Because the Chiefs presented the arbitration contract to Sniezek after they had already offered her employment and she had already accepted it, she was essentially in the same position as the employees in *Whitworth, Frye,* and *Morrow* who were presented with arbitration contracts several months or years into their employment in exchange for continued at-will employment. Like the employees in those cases, Sniezek's signing the Agreement did not alter the nature of her at-will employment relationship. No employment contract was created, as the Chiefs did not give Sniezek an express duration for her employment or place limitations on her discharge. *Morrow*, 273 S.W.3d at 26. Sniezek's employment was still "terminable at the will of either party, on a moment-by-moment basis," for any or no reason. *Id.* The Chiefs could have fired her fifteen minutes after she signed the Agreement without suffering any legal consequences because her employment was at-will. *Id.* at 27; *Grimm v. Arctic Slope Reg'l Corp.*, No. 09–4186–CV–C–SOW, 2011 WL 7109331 at *11 (W.D.Mo. Mar. 2, 2011). Thus, the Chiefs' allowing Sniezek to keep the at-will employment that she had already been offered and had already accepted gave Sniezek no more than what the offers of continued employment gave the employees in *Whitworth, Frye,* and *Morrow*. Consequently, it was not sufficient consideration to support her promise to arbitrate. See *Whitworth*, 344 S.W.3d at 741; *Frye*, 321 S.W.3d at 438–39; and *Morrow*, 273 S.W.3d at 26–27.

 Sniezek's at-will employment with the Chiefs was not a legally enforceable employment relationship, so any terms and conditions placed on her employment were

not enforceable at law as contractual duties. *Morrow*, 273 S.W.3d at 26. Sniezek's signing the Agreement was a term or condition of her employment with the Chiefs. When her employment with the Chiefs ended, her obligation to fulfill the terms and conditions of that employment, including her promise to arbitrate any disputes between her and the Chiefs, also ended. *Id.*

Because the Chiefs did not prove that the Agreement was supported by consideration, they failed to establish the existence of a valid and enforceable arbitration contract.[2] As this ruling is dispositive of the appeal, we need not address the Chiefs' claim in Point II that the Agreement encompassed the present dispute and was not unconscionable.

### Conclusion

We affirm the circuit court's order denying the Chiefs' motion to compel arbitration.

All Concur.

---

**2.** We recognize that, in interpreting an almost identical arbitration agreement, the court in *Grant v. Philadelphia Eagles, LLC*, No. 09–1222, 2009 WL 1845231, at *5 (E.D.Pa. June 24, 2009), found that there was sufficient consideration in the form of continued employment to support the agreement. In that case, however, it appears that the continued employment was not at-will but was pursuant to an employment contract. *Id.* Additionally, one of the cases cited in *Grant* indicates that, unlike in Missouri, continued employment, even if it is only at-will, "fulfills the consideration requirement under Pennsylvania law." *Id.* (citing *Gutman v. Baldwin Corp.*, No. 02–CV–7971, 2002 WL 32107938 (E.D.Pa. Nov. 22, 2002)). While the court in *Grant* also found that there was consideration in the form of the Eagles' mutual promise to be bound by arbitration, the court offered no explanation for this finding and did not discuss the agreement's plain language. *Id.*