STATE of Missouri EX REL. Renee Van ALST and Melvin Shelton, Relators,

v.

Honorable Kevin D. HARRELL, Judge, Circuit Court of Jackson County, Respondent.

WD 80421

Missouri Court of Appeals, Western District.

Filed: August 29, 2017

Phillip M. Murphy II, Kansas City, MO, for Relators.

Jeannie M. DeVeney and Sara K. McCallum, Kansas City, MO, for Respondent.

Before Writ Division: Edward R. Ardini, Jr., P.J., and Alok Ahuja and Gary D. Witt, JJ.

Alok Ahuja, Judge

Relators Renee Van Alst and Melvin Shelton are former employees of Rainbow USA, Inc. They sued Rainbow, and a supervisor at Rainbow, alleging claims under the Missouri Human Rights Act and the Minimum Wage Law. The circuit court granted the defendants' motion to compel arbitration. Van Alst and Shelton filed a petition for a writ of mandamus or prohibition in this Court to challenge the order compelling arbitration. We issued a preliminary writ, which we now make permanent.

### Factual Background

Van Alst and Shelton worked at a store operated by Rainbow in Kansas City. Pamela Thomas was a District Manager for Rainbow. Thomas was Van Alst and Shelton's direct supervisor from February 2013 until the termination of their employment in October 2014.

On February 16, 2016, Van Alst and Shelton filed the underlying lawsuit in the Circuit Court of Jackson County against Rainbow and Thomas. No. 1616-CV03568. Their petition alleged employment discrimination on the basis of race and age in violation of the Missouri Human Rights Act. The petition also alleged violations of the Minimum Wage Law for failing to pay Van Alst and Shelton for all hours worked, and for failing to pay overtime compensation to which they were entitled.

The defendants moved to compel arbitration. The motion was based on purported arbitration agreements which are entitled "Acknowledgement," and which were included in Rainbow's Employee Handbook. Van Alst and Shelton separately signed the Acknowledgment electronically on September 30, 2014, during the course of their ongoing employment. The Acknowledgement provided in full:

I have read and understand the policies set forth in the Employee Handbook. I agree to abide by the policies of the Company as reflected in this Handbook, in the Operations Manual, and in other published memoranda. I also understand that my employment is at will, and that either I or the Company may end my employment at any time and for any reason.

*MANDATORY ARBITRATION OF CLAIMS*: I agree that any claim related to my employment, including wage and compensation claims, and including claims related to the termination of my employment, shall be resolved through arbitration as the exclusive forum, and I hereby waive any right to pursue such claim in court or in a trial by jury, either as a plaintiff or a collective class member. Claims may be brought before the American Arbitration Association, the National Arbitration Forum, or JAMS/Endispute, at the election of the party bringing the claim. Any appropriate remedies available under statutory law may be awarded in arbitration, and the decision of the arbitrator shall be final and binding on all parties. I agree that there is no right to participate in a representative capacity, or as a member of any class or collective group, in any claim brought to arbitration, and that there is no right or authority for any claims to be arbitrated on a class action or collection action basis, nor may claims be joined or consolidated in the arbitration unless the individual and the Company jointly agree in writing.

All store and field employees must electronically acknowledge their agreement at the register.

Neither Rainbow nor Thomas executed the Acknowledgment.

Van Alst and Shelton responded to the motion to compel arbitration by arguing that the Acknowledgement was not a valid

agreement to arbitrate because it lacked mutuality, and was not supported by adequate consideration.

The circuit court granted the defendants' motion to compel arbitration on October 31, 2016. Van Alst and Shelton filed a petition for a writ of mandamus or prohibition in this Court on January 27, 2017, asking that we order the circuit court to rescind its order compelling arbitration, and to instead deny the motion. This Court issued a preliminary writ on March 15, 2017, and the case was then fully briefed and argued.

## Standard of Review

■■■ An order *denying* a motion to compel arbitration is subject to immediate interlocutory appeal under § 435.440, RSMo. *See Sanford v. CenturyTel of Mo., LLC*, 490 S.W.3d 717, 718 (Mo. banc 2016). Orders *granting* motions to compel arbitration are not appealable, however. Instead, "a writ of mandamus is an appropriate mechanism to review whether a motion to compel arbitration was improperly sustained." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015) (citation omitted). While it is true that, under Rule 84.22(a), this Court may not issue a remedial writ "in any case wherein adequate relief can be afforded by an appeal," an appeal may not constitute an adequate remedy where arbitration has been ordered erroneously. *Hewitt* explained that

> mandamus is an appropriate remedy when alternative remedies waste judicial resources or result in a burdensome delay, creating irreparable harm to the parties. If [a relator] is not bound to arbitrate under the terms of his contract, this Court can readily avoid this duplicative and unnecessary additional litigation through a writ of mandamus. To do otherwise would be [sic] result in a failure of judicial efficiency.

461 S.W.3d at 806 (citations omitted).[1] To obtain relief by mandamus, the relator must "allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Id.* at 805 (citation and internal quotation marks omitted).[2]

■■■ "The issue of whether arbitration should be compelled is a question of law subject to *de novo* review." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014); *accord, Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015).

## Discussion

Van Alst and Shelton argue that the Acknowledgment which they executed is not a valid agreement to arbitrate, because

---

1. Although the Supreme Court's decision in *Hewitt* resulted in multiple separate opinions, "[f]ive judges [found] that a writ of mandamus [was] the appropriate mechanism to review whether the trial court erred in sustaining a motion to compel arbitration." *Hewitt*, 461 S.W.3d at 803.

2. Van Alst and Shelton filed a petition for a writ of mandamus *or prohibition*. We find it unnecessary to decide whether mandamus or prohibition is the appropriate remedy in the circumstances of this case. As the Supreme Court observed in *Hewitt*,
   > to the extent that it could be argued that prohibition rather than mandamus is the

more appropriate writ, this Court has noted [that] [t]he distinction between prohibition and mandamus is often elusive and sometimes only serves to create confusion for parties. ... [T]his confusion has led the court of appeals to hold that distinctions between the two types of writs are anachronistic and that, in modern practice, the distinction between mandamus and prohibition is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap to a great extent. 461 S.W.3d at 806-07 (citations and internal quotation marks omitted).

it is not supported by valid consideration. We agree.

■ "A motion to compel arbitration requires the court to consider three factors: (1) whether a valid arbitration agreement exists; (2) whether the dispute falls within the scope of the agreement; and (3) whether applicable contract principles subject the agreement to revocation." *Sharp v. Kansas City Power & Light Co.*, 457 S.W.3d 823, 826 (Mo. App. W.D. 2015) (citation omitted). The parties' arguments focus on the first factor: whether a valid arbitration agreement exists.

■ "The Federal Arbitration Act ('FAA'), 9 U.S.C. § 1 *et seq.* (2006), governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce." *Eaton*, 461 S.W.3d at 431. Because Van Alst and Shelton are residents of Missouri, and Rainbow is a New York corporation registered to do business in Missouri, the Acknowledgement involves interstate commerce and is subject to the FAA. *See Hewitt*, 461 S.W.3d at 805.

■ In determining whether an arbitration agreement is valid under the FAA, "arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts." *Eaton*, 461 S.W.3d at 432 (citation omitted).

> Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate. The essential elements of any contract, including one for arbitration, are offer, acceptance, and bargained for consideration. Consideration consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party.

*Baker*, 450 S.W.3d at 775 (citations and internal quotation marks omitted).

The Acknowledgment states that Van Alst and Shelton were at-will employees of Rainbow. They were asked to agree to the Acknowledgment during the course of their ongoing employment with the company, and it appears that Van Alst and Shelton were *required* to execute the Acknowledgment in order to retain their employment. The parties agree, however, that continued at-will employment cannot constitute adequate consideration to sustain an arbitration agreement under Missouri law. *See Baker*, 450 S.W.3d at 775; *Jimenez v. Cintas Corp.*, 475 S.W.3d 679, 684-85 (Mo. App. E.D. 2015).

■ Instead, the defendants have argued that the consideration for the Acknowledgment is the parties' *mutual* agreement to arbitrate disputes, and their *mutual* waiver of the right to pursue claims through the court system. "Generally speaking, . . . if a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration." *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438 (Mo. App. W.D. 2010); *see also Hewitt*, 461 S.W.3d at 808-09; *Jimenez*, 475 S.W.3d at 685-86.

Van Alst and Shelton argue that no *mutual* promises were made here. To the contrary, Van Alst and Shelton contend that they were the only ones who promised to arbitrate claims and waive judicial remedies. Van Alst and Shelton argue that their *unilateral* promises to arbitrate are unenforceable, because no consideration flowed to them in exchange for their promises. They rely heavily on our decisions in *Clemmons v. Kansas City Chiefs Football Club, Inc.*, 397 S.W.3d 503 (Mo. App. W.D. 2013), and *Sniezek v. Kansas City Chiefs Football Club*, 402 S.W.3d 580 (Mo. App. W.D. 2013).

In both *Clemmons* and *Sniezek*, the employees executed the following arbitration agreement:

> In consideration of my employment by Kansas City Chiefs Football Club, Inc., (hereinafter "the Club"); I hereby agree to comply at all times with, and to be bound by, the Constitution and By-Laws of the National Football League ("the League"), in their present form and as amended from time to time hereafter, and the decisions of the Commissioner of the League. I agree that all matters in dispute between me and the Club shall be referred to the Commissioner, and that his decision shall be accepted as final, binding and conclusive on me and on the Club. I further agree to fully release and discharge the Commissioner, the League, each Club in the League and each owner, officer, employee or agent thereof, and each official, employee or agent of the League, and all of them, in their individual and representative capacities, from any and all claims, demands, actions and/or causes of action arising out of or in any way connected with or related to any decision or the Commissioner (whether in connection with a dispute between me and the club or otherwise) that involves or in any way affects me, except to the extent of awards made to me by the Commissioner.

*Clemmons*, 397 S.W.3d at 505; *Sniezek*, 402 S.W.3d at 582.

The Chiefs argued that mutual promises were reflected in the agreements' statement that "all matters in dispute between me and the Club" would be arbitrated before the Commissioner, and that his decisions would be "final, binding and conclusive on me and the Club." We found that the Chiefs' interpretation was "contrary to the plain language of the Agreement."

*Clemmons*, 397 S.W.3d at 506; *Sniezek*, 402 S.W.3d at 584. We explained:

> All three sentences of the Agreement contain promises made only by [the employee]. Only [the employee] agreed to comply at all times with and be bound by the constitution and bylaws of the National Football League ("NFL"); only [the employee] agreed that all matters in dispute should be referred to the Commissioner for a binding and conclusive decision; and only [the employee] agreed to release the various listed parties upon the Commissioner.s decision. Nowhere did "the Club," i.e., the Chiefs, agree to do anything. Essentially, the Chiefs are asking us to find that [the employee] could bind the Chiefs, by his signature, to the same promises he made in the Agreement. The plain language of the Agreement contains no promises by the Chiefs.

*Clemmons*, 397 S.W.3d at 506-07; *Sniezek*, 402 S.W.3d at 584. The court concluded that "[t]he Agreement does not contain any mutual promises by the Chiefs that constitute sufficient consideration for [the employee's] promise to forgo his right of access to the courts and arbitrate his claims against them." *Clemmons*, 397 S.W.3d at 507; *Sniezek*, 402 S.W.3d at 584-85.

As in *Clemmons* and *Sniezek*, the plain language of the Acknowledgment contains promises made only by Van Alst and Shelton. Only Van Alst and Shelton agree: to resolve employment-related claims "through arbitration as the exclusive forum"; to waive their right to pursue their claims through the court system or a jury trial; and to waive their right to litigate or arbitrate their claims as a class or collective action. As in *Clemmons* and *Sniezek*, "[n]owhere did [Rainbow] agree to do anything." *Clemmons*, 397 S.W.3d at 507; *Sniezek*, 402 S.W.3d at 584.

The Acknowledgment uses the first-person singular pronoun "I" seven times; it does not use the first-person plural pronoun "we" even once. As Van Alst and Shelton aptly note, "There is no 'I' in 'mutual.'" The Acknowledgment ends by specifying that *employees* must "acknowledge their agreement" to the Acknowledgment; there is no suggestion that the employer must agree, or document its agreement in any particular fashion.

The defendants seek to distinguish *Clemmons* and *Sniezek* based on the fact that the Acknowledgement contains language stating that "any claim relating to" the Relators' employment "shall be resolved through arbitration as the exclusive forum." This is essentially the same argument that the Chiefs made in *Clemmons* and *Sniezek*, and which this Court found insufficient to establish mutually binding promises. As in *Clemmons* and *Sniezek*, the language on which the defendants rely to establish mutuality appears in a sentence which begins, "*I* agree. . . ." Moreover, as in *Clemmons* and *Sniezek*, the defendants' argument would essentially mean that Van Alst and Shelton "could bind the [defendants], by [their] signature[s], to the same promises [Van Alst and Shelton] made." We are aware of no authority which would give Van Alst and Shelton the power to bind Rainbow or Thomas.

The defendants also rely on the statement in the Acknowledgement that claims could be brought before three different arbitration organizations, "at the election of the party bringing the claim." Defendants contend that the reference to "the party bringing the claim" signifies that persons other than the employee executing the Acknowledgment could be "bringing the claim." Given all of the other indications in the Acknowledgment that it is binding only on the employee, however, the single reference to "the party bringing the claim" is too slender a reed from which to find that the Acknowledgment creates mutual—and *mutually binding*—promises to arbitrate. Although the reference to "the party bringing the claim" may be somewhat vague and imprecise, it can be read to refer to the employee, and nothing in the phrase necessarily refers to the employer. We will not read this isolated phrase as imposing a binding obligation on Rainbow, or Thomas, to arbitrate their claims.

The Acknowledgment did not contain mutually binding promises to arbitrate. Because the Acknowledgement was not supported by adequate consideration, it was not a valid and binding arbitration agreement. The circuit court erred by compelling arbitration based on this unenforceable agreement.

## Conclusion

We make permanent the preliminary writ of mandamus issued on March 17, 2017. The circuit court is directed to vacate its October 31, 2016 order compelling arbitration, and is further directed to enter an order denying the defendants' motion to compel arbitration.

All concur.