PER CURIAM
A former employee of the St. Louis Rams Partnership, Todd Hewitt, seeks a writ of mandamus requiring the circuit court to vacate its order compelling arbitration of his claim of age discrimination against the St. Louis Rams Partnership and three of its affiliates. Five judges find that a writ of mandamus is the appropriate mechanism to review whether the trial court erred in sustaining a motion to compel-arbitration. Four judges find that Mr. Hewitt’s employment contract contained a valid and enforceable arbitration clause that required him to arbitrate disputes, including his statutory claims, against the Rams. Four judges also find that the National Football League’s dispute resolution procedural guidelines setting out the essential terms of arbitration were not referenced in Mr. Hewitt’s employment contract and, therefore, were not incorporated into his contract. Four judges further find that the terms of the contract designating the NFL commissioner, an employee of the team owners, as the sole arbitrator with unfettered discretion to establish the rules for arbitration are unconscionable and, therefore, unenforceable. Four judges find that Missouri’s uniform arbitration act provides a mechanism to imply the terms missing from the arbitration agreement and provides the rules for appointing an arbitrator to replace the NFL commissioner. Accordingly, four judges issue a permanent writ of mandamus directing the trial court to vacate its order granting the motion to compel arbitration and, instead, issue an order compelling arbitration wherein the trial court appoints a neutral arbitrator, implies the specific terms of arbitration from applicable statutes in Missouri’s uniform arbitration act, and directs the parties to proceed with arbitration.
I. Factual and Procedural Background
The Rams are a professional football team affiliated with the NFL. Starting as a summer equipment department employee for the Rams during college, Mr. Hewitt joined the organization full time in 1978 and was promoted to equipment manager in 1985. He held that position until early 2011.
Mr. Hewitt entered into a number of employment contracts with the Rams during the more than 40 years he was employed by the team. In November 2008, he signed his most recent contract with the Rams. It covered the 2009-2010 and 2010-2011 NFL seasons. Like many of his prior employment contracts, this contract contained an arbitration clause that stated:
Hewitt agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League and by the decisions of the Commissioner of the *804 National Football League, which shall be final, binding, conclusive and unap-pealable. The Rams and Hewitt also severally and mutually promise and agree that in any dispute which may arise between them, the matter in dispute shall be referred to the Commissioner of the National Football League for decision and after due notice and hearing, at which both parties may appear, the decision of said Commissioner shall be final, binding, conclusive and unappealable, and the Rams and Hewitt severally and jointly hereby release the Commissioner and waive every claim each or both have or may have against the Commissioner and/or the National Football League, and against every director, partner, officer, and stockholder of every Club in the National Football League, for all claims and demands whatsoever arising out of or in connection with any decision of the Commissioner of the National Football League.
The constitution and bylaws of the NFL further provided that “[t]he Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate.”
' In January 2011, then head coach Steve Spagnuolo notified Mr. Hewitt that his employment contract would not be renewed. At that time, Mr. Hewitt was 54 years old. In May 2012, Mr. Hewitt filed suit in the St. Louis County circuit court against the St. Louis Rams Partnership and three affiliated companies — The Rams Football Company, Inc., ITB Football Company, L.L.C., and The St. Louis Rams, L.L.C. — -(collectively “the Rams”) alleging age discrimination in violation of the Missouri Human Rights Act (MHRA), section 213.010 et seq.[1]
The Rams moved to compel arbitration and to dismiss or stay the court proceedings, citing the arbitration provision of Mr. Hewitt’s employment contract. Mr. Hewitt opposed arbitration, arguing that the arbitration provision was invalid and unenforceable against him because: (1) three of the four defendants did not sign the agreement; (2) there was no meeting of the minds as to the essential terms of the arbitration agreement; (3) there was no consideration for the arbitration agreement; (4) the agreement does not contain a clear and unmistakable waiver of Mr. Hewitt’s right to bring a statutory violation claim in court and several provisions of the arbitration agreement interfere with Mr. Hewitt’s rights under the MHRA, barring arbitration under the “denial of statutory rights” doctrine; and (5) several provisions of the arbitration agreement are unconscionable, including the provision naming the NFL commissioner as the arbitrator.
The trial court granted the Rams’ motion to compel arbitration and ordered that the court action be stayed pending the arbitration. After an unsuccessful attempt at an appeal,[2] Mr. Hewitt petitioned the court of appeals for a writ of mandamus or prohibition. The court of appeals issued a *805 preliminary order in mandamus. After opinion, both parties sought, and were granted, transfer to this Court pursuant to article V, section 10 of the Missouri Constitution. On transfer, Mr. Hewitt asks this Court to issue a writ of mandamus preventing the trial court from compelling arbitration of this dispute.[3]
II. Standard of Review and Issuance of Writ of Mandamus
This Court has the authority to “issue and determine original remedial writs,” including the extraordinary writ of mandamus. See Mo. Const. art. V, sec. 4.1. This Court recognized, in State ex rel. Vincent v. Schneider that a writ of mandamus is an appropriate mechanism to review whether a motion to- compel arbitration was improperly sustained. 194 S.W.3d 853, 855 (Mo. banc 2006). A litigant seeking “relief by mandamus must allege and prove that he has a clear, unequivocal, specific right to a thing claimed.” Furlong Cos., Inc. v. City of Kansas City, 189 S.W.3d 157, 166 (Mo. banc 2006). This right may arise from a statute that creates a right but does not explicitly provide mandamus as a remedy to enforce the right. See State ex rel. JCA Architects, Inc. v. Schmidt, 751 S.W.2d 756, 757 (Mo. banc 1988). Additionally, this Court will not issue a remedial writ “in any case wherein adequate relief can be afforded by an appeal.” Rule 84.22(a).
The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2006), governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce. Section 2 extends the scope of the FAA to any “contract evidencing a transaction involving commerce.” 9 U.S.C. § 2. Section 1 defines “commerce” as “commerce among the several States.” Id. § 1. The United States Supreme Court has construed this language broadly, stating:
We have interpreted the term “involving commerce” in the FAA as the functional equivalent of the more familiar term “affecting commerce” — words of art that ordinarily signal the broadest permissible exercise of Congress’ Commerce Clause power. Because the statute provides for “the enforcement of arbitration agreements within the full reach of the Commerce Clause,” it is perfectly clear that the FAA encompasses a wider range of transactions than those actually “in commerce” — that is, “within the flow of interstate commerce.”
Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (internal citations omitted).
The Supreme Court further has held that the FAA applies even when, for example, an arbitration agreement is executed in a single state by residents of that state if one of the parties to the agreement engages in business in multiple states. Id. at 57, 123 S.Ct. 2037. It is undisputed that the Rams operate in interstate commerce; the team — its players and employees- — ■ participate in away games and take in revenue in other states, and several of the defendant corporations named in this suit are incorporated in Delaware. Mr. Hewitt’s employment contract to provide equipment managerial services to the team as it was engaged in interstate commerce brings the contract within the purview of the FAA.[4]
*806 Under the FAA, a party must submit to arbitration “save upon such grounds as exist at law or in equity for the revocation of any contract.”[5] 9 U.S.C. § 2.[6] This Court and the Supreme Court have found the contract defenses Mr. Hewitt raises fall under the FAA’s aforementioned savings clause. AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011); Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 515 (Mo. banc 2012). Mr. Hewitt has a clearly established right to arbitrate his claims using only those terms that are not unconscionable as determined using the general principles governing contract law in Missouri. See Robinson, 364 S.W.3d at 515.
Further, mandamus is an appropriate remedy when alternative, remedies waste judicial resources or result in a burdensome delay, creating irreparable harm to the parties. State ex rel. Sasnett v. Moorhouse, 267 S.W.3d 717, 725 (Mo.App.2008). If Mr. Hewitt is not bound to arbitrate under the terms of his contract, this Court can readily avoid this duplica-tive and unnecessary additional litigation through a writ of mandamus. To do otherwise would be result in a failure of judicial efficiency. Accordingly, there is no adequate remedy on appeal for the present claims. See Vincent, 194 S.W.3d 853. Here, as in Vincent, a writ of mandamus is the proper mechanism to review the grant of a motion to compel arbitration.
While this Court has held that inconvenient delay to the complaining party is not, in itself, a basis for the issuance of a writ of mandamus, the ruling was based on very different circumstances. State ex rel. Kelley v. Mitchell, 595 S.W.2d 261, 268 (Mo. banc 1980). In Kelley, the relators first sought declaratory judgment regarding the construction of a contested statute and, one day later, filed a writ of mandamus. Id. at 262-63. The Court found the writ of mandamus was an inappropriate attempted “short-cut” because there was “no reason to doubt that the relators would be able to receive full, prompt and adequate relief in the declaratory judgment action.” Id. at 267. Mr. Hewitt has no immediate alternative remedy to his claim that the arbitration agreement is invalid. Additionally, the delay results in harm not only to the relator but also to both parties, who must needlessly protract litigation and dispute resolution, and to the courts, which have already devoted considerable resources to litigate this issue.
Additionally, to the extent that it could be argued that prohibition rather than mandamus is the more appropriate writ, this Court has noted, “[T]he distinction between prohibition and mandamus is often elusive and sometimes only serves to *807 create confusion for parties.” State ex rel. Unnerstall v. Berkemeyer, 298 S.W.3d 513, 515-16 (Mo. banc 2009). Unnerstall notes that this confusion has led the court of appeals to hold that distinctions between the two types of writs are anachronistic and that, in modem practice, “[t]he distinction between mandamus and prohibition is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap to a great extent.” Id. at 516 (internal citations omitted). For example, prohibition has also been used to prevent a waste of judicial resources through unnecessary, inconvenient and expensive litigation. State ex rel. Springfield Underground, Inc. v. Sweeney, 102 S.W.3d 7, 8-9 (Mo. banc 2003); See also State ex rel. Police Ret. Sys. of St. Louis v. Mummert, 875 S.W.2d 553 (Mo banc.1994).
III. Arbitration Clause is Valid and Enforceable
Mr. Hewitt asserts the arbitration provision is invalid and unenforceable on numerous grounds, including that it provides for a decision by an allegedly biased arbitrator, a lack of mutual agreement to the arbitration’s essential terms, lack of consideration, lack of waiver of and a denial of his statutory rights, and allegations of procedural unconscionability. He also contends that the three named defendants that did not sign the employment contract cannot enforce the arbitration provision against him. Mr. Hewitt’s claims of lack of consideration and procedural uncon-scionability relate to the validity of the agreement to arbitrate, whereas his claims regarding the arbitrator and terms of arbitration relate to only specific terms of arbitration. Accordingly, the Court will address these claims separately. The Court will also address separately Mr. Hewitt’s arguments that he did not waive his right to bring his statutory claim in a judicial forum and that the defendants who did not sign the contract cannot enforce it because those arguments involve whether the arbitration agreement encompasses his underlying claims.
A. The Court May Determine Whether the Arbitration Agreement is Valid
As previously discussed, Mr. Hewitt’s employment contract is governed by the FAA. The Supreme Court stated in Concepcion that the FAA reflects a “liberal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.... [Cjourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms.” 131 S.Ct. at 1745 (internal citations and quotation marks omitted).
If there is no valid arbitration clause, however, then there is no agreement to arbitrate, and the case may proceed in civil court. See 9 U.S.C. § 2. A court determines the validity of an arbitration agreement by applying state contract law principles. Vincent, 194 S.W.3d at 856. In Brewer v. Missouri Title Loans, this Court reaffirmed that Concepcion did not diminish a trial court’s broad authority to evaluate the validity and enforceability of arbitration agreements prior to granting or denying a motion to compel arbitration and, so, “permit[s] state courts to apply state law defenses to the formation of the particular contract at issue.” 364 S.W.3d 486, 492 (Mo. banc 2012). This provision means that, prior to referral to arbitration, a Missouri court can declare an arbitration agreement “unenforceable if a generally applicable contract defense, such as fraud, duress, or unconscionability, applie[s] to concerns raised about the agreement.”[7] *808 Robinson, 364 S.W.3d at 515 (Mo. banc 2012); see also Brewer, 364 S.W.3d at 492 n. 3.
Mr. Hewitt concedes that his employment contract included an arbitration provision, and the trial court found that a similar arbitration provision had been included in many of the previous employment contracts he signed with the Rams over the prior 40 years. This provision is treated like any other contract and •is enforced according to its terms. See Concepcion, 131 S.Ct. at 1745. The terms of a contract are to be read “as a whole to determine the intention of the parties,” giving the terms “their plain, ordinary, and usual meaning.” Dunn Indus. Grp., Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. banc 2003). According to the plain language in his contract with the Rams, Mr. Hewitt intended to be legally bound by the constitution and bylaws of the NFL, which provided that his disputes would be arbitrated.
B. Arbitration Clause is Supported by Valid Consideration
Despite executing an agreement to arbitrate, Mr. Hewitt asserts the agreement is not valid for lack of consideration. Specifically, he claims a lack of consideration on the basis that both contracting parties were not bound by the arbitration agreement. As Mr. Hewitt notes, the first sentence of the provision states only that “Hewitt agrees to abide by and to be legally bound by the Constitution and ByLaws and Rules and Regulations of the National Football League and by the decisions of the Commissioner of the National Football League, which shall be final, binding, conclusive and unappealable.”
But the arbitration provision does not end there. The following sentence states, “The Rams and Hewitt also severally and mutually promise and agree that in any dispute which may arise between them, the matter in dispute shall be referred to the Commissioner of the National Football League for decision.... ” In this second sentence, the Rams expressly promise to arbitrate any and all disputes before the commissioner. Both the Rams and Mr. Hewitt signed and are bound by this agreement. The trial court found that the Rams’ agreement with the NFL stated that they, as members of the league, would be bound by the constitution and bylaws, which expressly refer to the commissioner’s authority to arbitrate. While, as Mr. Hewitt notes, legal questions could arise as to the meaning of some of these constitutional provisions or bylaws, he has not demonstrated that a fact question exists as to the content of these provisions or as to the fact that those provisions say that NFL teams must comply with their terms.
The record supports the trial court’s explicit finding that the constitution and bylaws “already bind the St. Louis Rams Partnership, [but] Mr. Hewitt must separately agree to be bound.” Mr; Hewitt cites no cases that would have required the Rams to expressly reaffirm their NFL membership agreement obligations in each individual employment contract they sign when, as here, the individual employment *809 contract requires that arbitration be determined by the commissioner and governed by the NFL constitution and bylaws.
Indeed, the language of the arbitration agreement signed by Mr. Hewitt and the Rams distinguishes this case from the two cases cited by Mr. Hewitt in which arbitration agreements in NFL employment contracts were found to lack consideration. Sniezek v. Kansas City Chiefs Football Club, 402 S.W.3d 580 (Mo.App.2013), and Clemmons v. Kansas City Chiefs Football Club, Inc., 397 S.W.3d 503 (Mo.App.2013). In those agreements, the employees alone promised to be bound by the constitution and bylaws of the NFL and to refer disputes to the commissioner for arbitration. The Chiefs did not, as the Rams do here, promise to arbitrate disputes before the commissioner, nor did they sign the agreements at issue in Sniezek and Clemmons. By contrast, Mr. Hewitt’s employment contract was signed by and is binding on both Mr. Hewitt and then Rams’ president and general manager, Jay Zygmunt. Therefore, Mr. Hewitt’s argument that the agreement lacked consideration fails.
C. No Procedural Unconscionability
Mr. Hewitt contends the agreement should not be enforced because the conditions under which he renewed his employment contract were unconscionable. Specifically, he asserts the contract was, presented “in a hurried way without any discussion of [the contract’s] terms.” This argument is undermined by Mr. Hewitt’s own long, more than 40 year tenure as a Rams employee, during which time the trial court found he had signed many employment contracts containing arbitration provisions substantially similar to this one.[8] As the trial court stated, “If Mr. Hewitt did not read his contract, inquire about its terms or ask for supporting documents during those decades, the [cjourt is not able to turn back the hands of time and shield him from his own contractual promises.” •
Mr. Hewitt also argues that the take-it- or-leave-it basis of the agreement makes it an adhesion contract. He concedes, however, that he did not attempt to negotiate the terms of his contract, except on one occasion as to an earlier contract for which he provides no further information as to his success or failure. Mr. Hewitt’s con-clusory allegations that he was unable to alter the terms of his contract and that there was disparity in the parties’ bargaining power do not prove themselves, nor would they make the agreement unconscionable. See Vincent, 194 S.W.3d at 857 (failure to negotiate does not “prove the negative” that one could not have done so).
Rather, as this Court made clear in Robinson, lack of negotiation and the adhesive nature of a contractual agreement are factors to consider in determining unconscionability, but “post-Concepcion, a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modem consumer contracts generally.” 364 S.W.3d at 515. “Mere inequality in bargaining power ... is not a sufficient reason to hold that arbitration agreements are never enforceable *810 in the employment context.” Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); see also Brewer, 364 S.W.3d at 495; Smith v. Kriska, 113 S.W.3d 293, 298 (Mo.App.2003). Mr. Hewitt does not allege that he “was coerced or defrauded into agreeing to the arbitration clause,” Gilmer, 500 U.S. at 33, particularly after decades of signing such agreements. He further offers no other explanation of why the disparity in bargaining power should invalidate the contract in the absence of evidence that the Rams abused their power.
Under the plain language of the employment contract between Mr. Hewitt and the Rams, Mr. Hewitt agreed to arbitrate his disputes against the Rams. The agreement is supported by consideration and obligates both parties to arbitrate. Further, Mr. Hewitt does not show that the circumstances under which the contract was entered into were so unconscionable as to render the agreement invalid. Therefore, there is a valid and enforceable agreement to arbitrate.
IV. Terms of Arbitration
Next, Mr. Hewitt asserts that the arbitration agreement is invalid and unenforceable because there was no mutual agreement to the essential terms of arbitration. The arbitration provision in Mr. Hewitt’s employment contract states:
Hewitt agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League and by the decisions of the Commissioner of the National Football League, which shall be final, binding, conclusive and unap-pealable ....
The constitution and bylaws of the NFL further provide:
The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate!)] ... The Commissioner shall interpret and from time to time establish policy and procedure in respect to the provisions of the Constitution and Bylaws and any enforcement thereof.
In its order compelling arbitration, the trial court found that the NFL dispute resolution procedural guidelines governed the arbitration procedure and that both parties were bound by the guidelines. Mr. Hewitt acknowledges that the arbitration provision clearly states he will be bound by “the Constitution and By-Laws and Rules and Regulations” of the NFL but contends he did not have sufficient information to make him aware of the full provisions of his employment contract because it does not directly mention the guidelines or attach them. Similarly, Mr. Hewitt asserts that the reference to the commissioner’s authority to interpret and establish policy does not reference the terms found in the guidelines with any amount of specificity that would enable him to assent to these terms. Mr. Hewitt stated in his affidavit that he did not know of the existence of the guidelines until the Rams sought to compel him to arbitrate his age discrimination claim.
A valid arbitration clause in an employment contract requires mutuality of agreement, which “implies a mutuality of assent by the parties to the terms of the contract.” Abrams v. Four Seasons Lakesites/Chase Resorts, Inc., 925 S.W.2d 932, 938 (Mo.App.1996). Terms not explicit in a contract may be incorporated into the contract by reference. Dunn Indus. Grp., 112 S.W.3d at 435 n. 5. The intent to incorporate must be clear. See St. Louis Union Trust Co. v. Blue, 353 S.W.2d 770, 777 (Mo.1962). To incorporate terms from another document, the contract must “make[] clear reference to the document *811 and describe[] it in such terms that its identity may be ascertained beyond a doubt.” Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc., 204 S.W.3d 183, 196 (Mo.App.2006).
A. Guidelines Not Incorporated Into Contract
The guidelines were not referenced in Mr. Hewitt’s employment contract, nor were they clearly referenced in the constitution and bylaws. Mr. Hewitt’s employment contract only refers to “Rules and Regulations of the National Football League.” This reference does not identify the guidelines in such a way that Mr. Hewitt could ascertain them beyond doubt. At best, under the terms of the constitution and bylaws, Mr. Hewitt agreed to arbitrate by undefined terms that the commissioner would establish. But these terms also lack certainty; Mr. Hewitt had no way to identify these terms and had no way to know that the NFL intended the guidelines to govern arbitration proceedings. Given the ambiguity of any terms actually referenced, Mr. Hewitt could not assent to them.
Moreover, Mr. Hewitt did not bear the burden to seek out an unknown document not clearly identified in his employment contract or the constitution and bylaws. Though the NFL and the Rams may have intended to incorporate the guidelines into the constitution and bylaws and the employment contract, respectively, it is a well-settled rule that “[i]f ambiguous, [a contract] will be construed against the drafter.” Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo. banc 2005). The Rams had the burden to incorporate the terms in such a way that Mr. Hewitt could manifest his consent. Having failed to do so, Mr. Hewitt did not assent to the essential terms of arbitration found in the guidelines. Though Mr. Hewitt agreed to arbitrate disputes against the Rams, the specific terms of arbitration are, therefore, unenforceable.[9]
B. Arbitration Terms Implied from Statute
Mr. Hewitt argues that the failure of the parties to agree to the specific terms of arbitration invalidates the arbitration clause in his employment contract. This Court has analyzed the validity of specific provisions of the arbitration agreement independently from the validity of the overall agreement to arbitrate. See Vincent, 194 S.W.3d at 855-58 (determining first “whether the parties have entered a valid agreement to arbitrate,” then whether arbitration provisions were unconscionable). As previously discussed, the agreement to arbitrate is valid because the plain language in his contract demonstrates that Mr. Hewitt intended to be legally bound by the constitution and bylaws of the NFL, which provided that his disputes would be arbitrated.
When an arbitration agreement is valid, but specific provisions are silent or unconscionable, the failure of the terms is remedied by implying the terms from statutes within the Missouri Uniform Arbitration Act (MUAA), section 435.350 et seq. Triarch Indus., 158 S.W.3d at 775; Vincent, 194 S.W.3d at 859-61. Specifically, “where an agreement is silent as to certain necessary matters concerning the arbitration, such as how arbitrators will be appointed, arbitrators’ right to exercise authority, notification of their award, and payment of fees and expenses, Missouri *812 will imply such terms.” Triarch Indus., 158 S.W.3d at 775. And when provisions in an arbitration agreement fail due to unconscionability, the court will imply the terms by statute. Vincent, 194 S.W.3d at 859-61. Consequently, the failure of the arbitration terms set out in the guidelines does not make the agreement to arbitrate unenforceable but will require that those terms be implied by statute.
V. Appointment of the Commissioner as Sole Arbitrator is Unconscionable
Mr. Hewitt further contends the arbitration agreement is unconscionable because it designates the commissioner as the arbitrator of any disputes arising between Mr. Hewitt and the Rams. That provision states:
The Rams and Hewitt also severally and mutually promise and agree that in any dispute which may arise between them, the matter in dispute shall be referred to the Commissioner' of the National Football League for decision and after due notice and hearing, at which both parties may appear, the decision of said Commissioner shall be final, binding, conclusive and unappealable....
The provision further states that Mr. Hewitt “agrees to abide by and to be legally bound by the Constitution and By-Laws and Rules and Regulations of the National Football League.” The latter documents include the following language:
Jurisdiction to Resolve Disputes
8.3 The Commissioner shall have full, complete, and final jurisdiction and authority to arbitrate:
[[Image here]]
(B) Any dispute between any player, coach, and/or other employee of any member[10] of the League (or any combination thereof) and any member club or clubs....
Mr. Hewitt argues that the commissioner cannot be neutral and unbiased in a dispute between an employee and a team’s management because the commissioner is selected and his salary determined by the team owners.[11] Section 8.1 of the constitution and bylaws states:
The League shall select and employ a person of unquestioned integrity to serve as Commissioner of the League and shall determine the period and fix the- compensation of his employment. All voting requirements and procedures for the selection of or successor to the office of Commissioner shall be determined by the affirmative vote of not less than two-thirds or 18, whichever is greater, of the members of the League.
The following provision, section 8.2 titled “Independence,” states, “The Commissioner shall have no financial interest, direct or indirect, in any professional sport.”
As previously discussed, prior to referral to arbitration, Missouri courts can evaluate unconscionability claims, including claims of actual arbitrator bias, under state law in the context of contract formation, looking at the contract or arbitration agreement as a whole to see whether the agreement to arbitrate is valid. Brewer, *813 364 S.W.3d at 492 n. 3. A court must assess the applicability of a state law contract defense under section 2 of the FAA on a “case-by-case” basis, rather than imposing a blanket rule. Brewer, 364 S.W.3d at 491; see also id. at-492 (“The question of whether a state law unconscionability defense [is preempted by the FAA] requires analysis of the particular facts of the case”).
A. Designation of NFL Commissioner as Arbitrator is Unconscionable
Based on the facts of the present case, the terms in the contract designating the commissioner, an employee of the team owners, as the sole arbitrator with unfettered discretion to establish the rules for arbitration are unconscionable and, therefore, unenforceable. The constitution and bylaws provide that the “League” consists of the team owners. Under the constitution and bylaws, the league “shall select and employ” the commissioner and set his or her term of employment and compensation. The constitution and bylaws also provide unequivocally that the commissioner is employed by the league; i.e., the team owners.
In effect, then, the commissioner is required to arbitrate claims against his employers. In' Vincent, this Court found unconscionable a provision in. an arbitration contract between a home builder and home purchasers that designated the president of a home builders association as the sole selector of the arbitrator because it found the president of the home builders association was “an individual in a position of bias.”[12] 194 S.W.3d at 859. Like the president of the home builders association in Vincent, the designated arbitrator, the commissioner, is an individual in a position oí bias as the arbitrator.
Additionally, due to the lack of any terms in the employment contract or in any document incorporated into the contract, the contract appoints the commissioner as not only the arbitrator but as the person who controls virtually every aspect of the arbitration from establishing the rules and procedures to making the final decision. Those provisions in the arbitration agreement are unconscionable. Id.
B. Replacement for Arbitrator Provided for by Statute
The unconscionability of the terms regarding the arbitrator does not invalidate the entire agreement to arbitrate. Vincent, 194 S.W.3d at 859-61. Instead, those unconscionable terms are replaced by the relevant provisions in the MUAA. Id. The MUAA provides for substitution of a new arbitrator when the designated arbitrator is disqualified. Section 435.360. This provision may be used to appoint a substitute arbitrator.
VI. Arbitration Clause Encompasses Mr. Hewitt’s Underlying Claim Against All Defendants
Lastly, Mr. Hewitt makes two claims involving the enforcement of the arbitration agreement to compel arbitration of his underlying MHRA claim. Specifically, he asserts he did not waive a judicial forum for his statutory claim under the MHRA and that the arbitration agreement cannot be enforced by the three named defen *814 dants who did not sign the employment contract.
A. Arbitration Clause Waives a Judicial Forum for Statutory Claims
Mr. Hewitt asserts he did not waive a judicial forum for his claim that he was fired in violation of the MHRA because the arbitration agreement language does not include statutory claims. He is incorrect. Under Missouri law, “[i]f a contract is unambiguous, the intent of the parties is to be discerned from the contract alone based on the plain and ordinary meaning of the language used.” Whelan Sec. Co. v. Kennebrew, 379 S.W.3d 835, 846 (Mo. banc 2012) (internal quotations omitted). The agreement at issue here mandates arbitration of “any dispute which may arise” between Mr. Hewitt and the Rams. “Any dispute” plainly means any dispute, including Mr. Hewitt’s statutory claims under the MHRA. Mr. Hewitt’s efforts to characterize this language as too ambiguous to be inclusive of statutory claims are unavailing.[13]
B. Non-signatory Defendants Can Enforce the Arbitration Agreement Against Mr. Hewitt
Mr. Hewitt asserts that defendants ITB Football Company, L.L.C., the Rams Football Company, Inc., and the St. Louis Rams, L.L.C., cannot enforce the arbitration agreement against Mr. Hewitt because, of the four named defendants, only the St. Louis Rams Partnership was a signatory to the agreement. This Court previously has rejected enforcement of an arbitration agreement against a signatory by a non-signatory on grounds that “arbitration is ultimately a matter of agreement between the parties.” Netco, Inc. v. Dunn, 194 S.W.3d 353, 361-62 (Mo. banc 2006). But Netco observed, as have the federal courts, that “a non-signatory may, in some instances, compel a signatory to arbitrate under the theory that the plaintiff/signatory is estopped from refusing to arbitrate.” Id. at 361.
Dominium Austin Partners, L.L.C. v. Emerson provides an example of a situation like the present one in which all parties are properly referred to arbitration. 248 F.3d 720 (8th Cir.2001). In Emerson, the court stated that all parties may arbitrate where “appellants made allegations which treat all these parties [signatories and non-signatories] as though they were signatories to the agreements.” Id. at 728. Similarly, Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration International, Inc., held that a signatory plaintiff could not avoid enforcement when the plaintiff treated signatory and non-signatory defendants as a “single unit.” 198 F.3d 88, 98 (2d Cir.1999). See also Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631, 129 S.Ct. 1896, 173 L.Ed.2d 832 *815 (2009); MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 947 (11th Cir.1999), abrogated on other grounds by Escobal v. Celebration Cruise Operator, Inc., 482 Fed.Appx. 475 (11th Cir.2012); CD Partners, LLC v. Grizzle, 424 F.3d 795, 798 (8th Cir.2005).
The principles -set out in these cases apply here. Mr. Hewitt’s petition makes no differentiation between the signatory and non-signatory defendants, referring to them collectively as “the Rams” or “Defendants” and alleging they fired him despite his contract due to age discrimination, stating, “Defendants, by their actions and failures to act, ... discriminated against Mr. Hewitt on the basis of his age in violation of the Missouri Human Rights Act” (emphasis added). In other words, he alleges that each is responsible for the single act of firing him due to age while he was under contract. If the other defendants (two of whom are partners in the' Rams partnership) were not bound by the contract, including the agreement to arbitrate, then Mr. Hewitt has failed to state any basis on which these non-signatory defendants employed him or could be liable for his firing. Mr. Hewitt cannot treat these defendants severally for arbitration purposes but jointly for all other purposes. His claim against the defendants is a single one that should be referred in its 'entirety to arbitration.
VII. Permanent Writ of Mandamus to Issue
A. Writ of Mandamus
Because Mr. Hewitt agreed to arbitrate his disputes with the Rams in his contract, the arbitration clause in Mr. Hewitt’s contract is valid, and Mr. Hewitt is legally bound to arbitrate his dispute with the Rams. Additionally, this agreement encompasses his statutory claim against all four defendants in the underlying action. Nevertheless, Mr. Hewitt did not mutually assent to the specific terms of arbitration set forth in the guidelines, and the contract terms regarding the designation of the commissioner as the sole arbitrator with the power to unilaterally set the rules of arbitration are unconscionable. Mr. Hewitt is, therefore, not bound to arbitrate his claims using the terms found in the guidelines and with the commissioner appointed as the sole arbitrator, who establishes the rules of arbitration. The failure of the arbitration terms set out in the guidelines does not make the agreement to arbitrate unenforceable but will require that those terms be implied by statute.'
Because Mr. Hewitt should not be compelled to arbitrate his claims using the terms in the guidelines and with the commissioner appointed as the sole arbitrator and because no adequate remedy exists on appeal, a permanent writ of mandamus should issue.
B. Directions to Trial Court
This Court directs the trial court to vacate its order granting the motion to compel arbitration using the arbitration terms set forth in the guidelines and then issue an order to compel arbitration whereby the trial court appoints a neutral arbitrator, see section 435.360, implies the specific terms of arbitration from applicable statutes in MUAA, see sections 435.350 to 435.470, and directs the parties to proceed with arbitration.
Russell, C.J., Breckenridge and Draper, JJ., concur; Stith, J., concurs in part and dissents in part in separate opinion filed; Teitelman, J., concurs in part and dissents in part in separate opinion filed; Fischer, J., dissents in separate opinion filed; Wilson, J., concurs in opinion of Fischer, J.; Wilson, J., dissents in separate opinion filed.

. All Missouri statutory references are to RSMo 2000, unless otherwise indicated.

. After ordering the noted referral to arbitration and a stay, the trial court also dismissed the case, apparently believing this would allow for immediate appeal of its ruling. Mr. Hewitt did appeal. The court of appeals did ' not reach the merits of the arbitration order at that time. Instead, it found the trial court's order simultaneously asserting jurisdiction by ordering arbitration to proceed and relinquishing jurisdiction by dismissing the case was "internally inconsistent.” It reversed the dismissal order and reinstated the trial court’s first order staying the court proceedings pending the outcome of arbitration. After remand, Mr. Hewitt filed his writ petition in the court of appeals. The propriety of the earlier proceedings during the appeal is not before this Court.

. Upon transfer, this Court "consider[s] the case the same as one that had been commenced as an original proceeding in this court.” State ex rel. Adrian Bank v. Luten, 488 S.W.2d 636, 636 (Mo. banc 1973), disapproved of on other grounds by State ex rel. Farmers Ins. Co., Inc. v. Murphy, 518 S.W.2d 655, 664 (Mo. banc 1975).

. The Missouri Uniform Arbitration Act (MUAA), section 435.350 et seq., governs *806 those arbitration matters not preempted by the FAA. This Court rejects Mr. Hewitt's argument that this matter is governed solely by the MUAA and not the FAA, but even were the FAA not applicable here, Missouri courts have recognized that the MUAA was “fashioned after the Federal Arbitration Act” and that "[t]he FAA and Missouri’s Arbitration Act are substantially similar.” CPK/Kupper Parker Commc’ns, Inc. v. HGL/L. Gail Hart, 51 S.W.3d 881, 883 (Mo.App.2001).

. This right is replicated in MUAA. See section 435.350.

. Section 2 of the FAA states in relevant part:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal,, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
(Emphasis added).

. While the ultimate issue simply is whether a contract or a term of the contract is un *808 conscionable, in making this determination, Missouri courts examine both the procedural aspects of contract formation and the substantive provisions of the contract. Vincent, 194 S.W.3d at 858. "Procedural uncon-scionability deals with the formalities of making the contract, while substantive un-conscionability deals with the terms of the contract itself.” Id. "Procedural unconscion-ability focuses on such things as high pressure sales tactics, unreadable fine print, or misrepresentation among other unfair issues in the contract formation process” while “[s]ubstantive unconscionability means an undue harshness in the contract terms.” Id.

. Although Mr. Hewitt’s reply brief notes that his affidavit admitted only to signing multiple employment contracts with the Rams, it was his burden to show that the arbitration provision was unconscionable because he did not have time to consider the provision before being forced to sign this or the prior Rams contracts, and he failed to present any facts countering the Rams statement that it can show that many of his earlier contracts contained similar clauses.

. Mr. Hewitt argues that a number of the rules of arbitration set out in the guidelines are unconscionable. Because Mr. Hewitt is not bound to arbitrate under the terms in the guidelines, this Court need not consider whether they are unconscionable.

. Section 2.1(A) of the NFL’s constitution and bylaws defines "member” as "an owner of a professional football club located in the United States.”

. Mr. Hewitt also argues that, by extension, the hearing officers the commissioner is authorized by the guidelines to designate in his place as arbitrator cannot be impartial. Because the parties are not bound by the terms in the guidelines, this Court only considers the commissioner’s neutrality as the arbitrator.

. In Vincent, the president of the home builders association was also the president of the company that was a party to the arbitration agreement. 194 S.W.3d at 859. The Court did not base its holding on this fact, however. Rather, the Court expressly found, “Even if the president of the Home Builder[s] Association of Greater St. Louis was not also the president of [the company that was a party to the arbitration agreement], this portion of the arbitration provision would be unconscionable." Id.

. The primary case cited by Mr. Hewitt is a Massachusetts case that is distinguishable both on the facts and on the governing law. In Warfield v. Beth Israel Deaconess Medical Center., Inc., the Massachusetts court stated that Massachusetts law requires that an agreement to arbitrate statutory claims must be "clear and unmistakable.” 454 Mass. 390, 910 N.E.2d 317, 325 (2009), abrogated on other grounds, Joule, Inc. v. Simmons, 459 Mass. 88, 944 N.E.2d 143, 150 n. 9 (2011). The court found the term "arising out of or in connection with [the employment agreement] or its negotiations” to be ambiguous and, ultimately, determined that the employee's sex discrimination claim was not covered by the arbitration clause. Id. at 327-28. The language at issue in the instant case is distinguishable and is unambiguous. It, therefore, is enforceable under Missouri law. The other cases Mr. Hewitt cites for this proposition concern waiver requirements under collective bargaining agreements — a separate strand of legal precedent and one not directly applicable here.