

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI EX REL.  )
SETH SCHERMERHORN,  )
    )
    Relator,  )
    )
v.  )    No. SD36747
    )
THE HONORABLE MICHAEL  )    **Filed:  November 12, 2020**
CORDONNIER,  )
    )
    Respondent.  )

### ORIGINAL PROCEEDING IN MANDAMUS

### <u>PRELIMINARY WRIT OF MANDAMUS QUASHED</u>

Seth Schermerhorn ("Relator") filed a personal injury lawsuit against New Prime, Inc. ("New Prime") and Michael David Tyner, Jr. ("Tyner") in the Circuit Court of Greene County ("the circuit court").  The suit alleged that Relator was a passenger in a tractor-trailer driven by Tyner, a New Prime employee, and Relator suffered bodily injuries when Tyner negligently drove off the road and overturned the truck.

New Prime filed a "Motion to Compel Arbitration and to Dismiss or Stay Action" that claimed arbitration agreements between the parties contained clear and unmistakable evidence that the parties intended to delegate the threshold issue of arbitrability to an arbitrator.  After conducting a hearing on the motion, the Honorable Michael Cordonnier ("Respondent") ruled that "[t]he parties have delegated the issue of arbitrability to an

arbitrator. Therefore, . . . the arbitrator, . . . not the Court, is vested with [the] authority to determine the merits of [Relator']s contest to the application of the arbitration agreement to the issues joined." Respondent stayed the circuit court action pending the arbitrator's resolution of the arbitrability issue.

Relator filed a petition for writ of mandamus that asked this court to direct Respondent to set aside his Order on the arbitrability issue, reinstate the case to the circuit court's active docket, and conduct an evidentiary hearing on whether Relator's personal injury claim is subject to mandatory arbitration. We issued a preliminary writ and ordered the parties to proceed with briefing under Rule 84.24(h).[1] In light of that briefing and further consideration of the existing case law, we now quash our preliminary writ.

> Orders *granting* motions to compel arbitration are not appealable[.] Instead, "a writ of mandamus is an appropriate mechanism to review whether a motion to compel arbitration was improperly sustained." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 805 (Mo. banc 2015) (citation omitted). While it is true that, under Rule 84.22(a), this Court may not issue a remedial writ "in any case wherein adequate relief can be afforded by an appeal," an appeal may not constitute an adequate remedy where arbitration has been ordered erroneously. *Hewitt* explained that
>
>> mandamus is an appropriate remedy when alternative remedies waste judicial resources or result in a burdensome delay, creating irreparable harm to the parties. If [a relator] is not bound to arbitrate under the terms of his contract, this Court can readily avoid this duplicative and unnecessary additional litigation through a writ of mandamus. To do otherwise would be [sic] result in a failure of judicial efficiency.
>
> 461 S.W.3d at 806 (citations omitted). To obtain relief by mandamus, the relator must "allege and prove that he has a clear, unequivocal, specific right to a thing claimed." *Id.* at 805 (citation and internal quotation marks omitted).
>
> "The issue of whether arbitration should be compelled is a question of law subject to *de novo* review." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770,

---

[1] All rule references are to Missouri Court Rules (2020).

774 (Mo. banc 2014); *accord, Eaton v. CMH Homes, Inc.*, 461 S.W.3d 426, 431 (Mo. banc 2015).

**State ex rel. Alst v. Harrell**, 528 S.W.3d 442, 445 (Mo. App. W.D. 2017) (footnotes omitted).

*Point 1*

Relator's first point is that "Respondent erred in compelling arbitration because there is no 'clear and unmistakeable [sic] evidence' that the parties intended to delegate the decision regarding arbitrability of later arising personal injury tort claims."

> A "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement. [The Supreme Court of the United States has] recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69, 130 S. Ct. 2772, 2777, 177 L.Ed.2d 403 (2010). Generally, disputes regarding the scope of an arbitration agreement are resolved *in favor of* arbitrability. *Soars* [*v. Easter Seals Midwest*], 563 S.W.3d [111,] 114 [(Mo. banc 2018)]. "However, when considering whether a court or an arbitrator should decide threshold questions of arbitrability, there is generally a presumption *against* arbitrability." *Id.* In this regard, the Missouri Supreme Court has recognized that there must be "clear and unmistakable evidence" that the parties intended to arbitrate the question of arbitrability "to overcome this presumption." *Id.*

**Fogelsong v. Joe Machens Auto. Grp. Inc.**, 600 S.W.3d 288, 293 (Mo. App. W.D. 2020).

"[W]e must first look to the terms of the parties' agreement to determine whether it contains a provision that 'clearly and unmistakably' delegates threshold issues of arbitrability to the arbitrator." **Hughes v. Ancestry.com**, 580 S.W.3d 42, 47 (Mo. App. W.D. 2019). Here, the parties agree that the Personnel Services Agreement ("PSA") is the agreement at issue.[2] The PSA is an agreement between New Prime and Relator regarding

---

[2] Although both parties also make references to an "Independent Contractor Operating Agreement" ("ICOA") and, at times, argue in their briefs as if the ICOA is the source of the operative arbitration agreement, both parties ultimately concede that the PSA is the agreement that we should look to in determining the parties' intent regarding arbitration issues. As a result, our analysis is limited to the provisions in the PSA that are identified and argued by the parties.

the leasing of drivers by New Prime to Relator and covers driver qualifications, compensation, termination, and dispute resolution. The PSA does not contain a specific delegation clause. In its absence, Respondent relies on the following provision of the PSA as evidencing a clear and unmistakable intent by the parties to have the arbitrator decide whether a dispute between the parties is subject to arbitration:

> Any dispute arising out of or relating to this Agreement, including an allegation of breach thereof, and the rights and obligations of the parties, shall be fully resolved by arbitration in accordance with Missouri's arbitration act and except as provided herein the Commercial Arbitration Rules of the American Arbitration Association [("AAA")] . . . shall apply.

> We agree. The AAA Commercial Arbitration Rules, incorporated by reference into the PSA, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."

> "An arbitration agreement 'need not recite verbatim that the parties agree to arbitrate arbitrability' in order to manifest [a] 'clear and unmistakable' agreement." *Caldwell* [*v. UniFirst Corporation*], 583 S.W.3d [84,] 90 [(Mo. App. E.D. 2019)] (quoting *Dotson* [*v. Dillard's Inc.*], 472 S.W.3d [599,] 604 [(Mo. App. W.D. 2015)]. "A delegation provision that gives an arbitrator the authority to resolve disputes relating to the enforceability, validity, or applicability of an arbitration agreement constitutes clear and unmistakable evidence that the parties intended to arbitrate arbitrability." *Id.* (quoting *Dotson*, 472 S.W.3d at 606).

*Hughes*, 580 S.W.3d at 47-48.

In **State ex rel. Pinkerton v. Fahnestock**, the parties' arbitration agreement specifically referenced and incorporated the AAA's commercial arbitration rules. Our supreme court held that this reference was sufficient to prove that the parties clearly and unmistakably intended to delegate the threshold issue of arbitrability to an arbitrator. 531 S.W.3d 36, 45 (Mo. banc 2017) (*abrogated on other grounds by* **Theroff v. Dollar Tree**

*Stores, Inc.*, 591 S.W.3d 432 (Mo. banc 2020)).  The commercial arbitration rules at issue in *Pinkerton* mirrored the rules at issue here as they provided that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  531 S.W.3d at 48.

Subsequent cases have duly followed *Pinkerton*'s holding in concluding that an arbitration agreement's reference to the AAA rules constitutes clear and unmistakable evidence of the parties' intent to submit the arbitrability decision to an arbitrator.  *See Fogelsong*, 600 S.W.3d at 294-96; *Latenser v. v. Tarmac Int'l, Inc.*, 549 S.W.3d 461, 463-64 (Mo. App. W.D. 2018); *NutraPet Sys., LLC v. Proviera Biotech, LLC*, 542 S.W.3d 410, 413 (Mo. App. W.D. 2017); and *Caldwell*, 583 S.W.3d at 91.

Relator attempts to distinguish *Pinkerton* on the ground that his claim for personal injury based in negligence is not a *commercial* dispute – the type of claim at issue in *Pinkerton*.  He argues that the arbitration clause in that case, by referencing the AAA Commercial Arbitration Rules, expressly referenced the type of claim at issue, whereas the PSA does not.

At first blush, this argument sounds plausible, but we do not read *Pinkerton*'s holding regarding the "gateway" issue of who decides arbitrability as being dependent in any way upon the specific nature of the parties' dispute.  Point 1 fails.

*Points 2 and 3*

We address Relator's remaining points together as they fail for the same reason.  Relator's second point claims Respondent erred in compelling arbitration because the arbitration agreements constitute unenforceable contracts of adhesion.  Point 3 claims

Respondent erred in compelling arbitration because the arbitration provisions, and any delegation clauses therein, are unconscionable and unenforceable.

Because these points challenge the arbitration agreements as a whole, they fail summarily. Our courts have repeatedly held that "a delegation provision is an additional arbitration agreement" that is "severable and should be considered separately from the underlying arbitration agreement." ***Caldwell***, 583 S.W.3d at 91.

> Thus, to properly contest the validity of a delegation provision, a party must challenge the provision specifically. [*Soars*, 563 S.W.3d at 114.] Absent such a direct, meritorious challenge to the delegation provision, the provision is valid and enforceable, and any challenge to the validity of the agreement as a whole is for the arbitrator. *Id.* A challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate. *Dotson*, 472 S.W.3d at 605; *Latenser,* 549 S.W.3d at 464.

***Id.***

In these points, the only challenge to the delegation clause is that it is part of an agreement that is unconscionable and unenforceable. Our courts have declined to address arguments against a delegation provision that are "expressly identical to . . . arguments against the [arbitration] [a]greement[s] as a whole." ***Soars***, 563 S.W.3d at 115-16. Such challenges are nothing more than an attempt "to circumvent [our high court]'s and the United States Supreme Court's holding that a party must specifically challenge a delegation provision to avoid its application." ***Id.*** at 116.

Points 2 and 3 also fail, and the preliminary writ of mandamus is quashed.

DON E. BURRELL, J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS