

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| **ROBERT S. EATON,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| **v.** | ) | **No. SC94374** |
| | ) | |
| **CMH HOMES, INC.,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **SOUTHERN ENERGY HOMES, INC.,** | ) | |
| **and HENRY CONCRETE, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### APPEAL FROM THE CIRCUIT COURT OF LINCOLN COUNTY
**The Honorable Chris Kunza Mennemeyer, Judge**

*Opinion issued May 26, 2015*

CMH Homes, Inc., appeals the trial court's overruling of its motion to dismiss or to stay the court proceeding and to compel arbitration in an action filed by Robert Eaton alleging fraud, negligence, breach of contract, and negligent misrepresentation in regard to CMH's sale to him of a manufactured home. Mr. Eaton opposed arbitration, arguing that the arbitration agreement lacks mutuality and is unconscionable on multiple grounds.

This Court finds that the trial court erred in refusing to compel arbitration. In *State ex rel. Vincent v. Schneider, 194 S.W.3d 853 (Mo. banc 2006)*, this Court held that courts will look to a contract (or amendment) as a whole to determine whether

consideration is adequate rather than looking solely at the consideration given for the agreement to arbitrate.[1] The Court, therefore, rejects Mr. Eaton's argument that his agreement to arbitrate was invalid solely based on the fact that the arbitration clause required Mr. Eaton to arbitrate all claims but gave CMH the right to bring suit in court "to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement."

But this Court also clarifies that a lack of mutuality of the obligation to arbitrate is one of the relevant factors a court will consider, along with the other terms of the contract, in determining whether the agreement to arbitrate otherwise is unconscionable. Here, the contract also provides that even if CMH chooses to sue in court "to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement," CMH is protected by an "anti-waiver clause":

> The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by [CMH] pursuant to this provision.

This Court finds this anti-waiver clause is unconscionable and invalid because it would

---

[1] This case, therefore, is unlike *Baker v. Bristol Care, Inc., 450 S.W.3d 770 (Mo. banc 2014)*, in which the employer sought to amend the employee's terms of at-will employment to include an agreement to arbitrate without providing additional consideration. As this Court held, such an amendment is not supported by consideration, and therefore, is not enforceable because the employer has made no legally enforceable promise. *Id. at 775-77*; *see also Frye v. Speedway Chevrolet Cadillac, 321 S.W.3d 429, 438-439 (Mo. App. 2010)*; *Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 26-27 (Mo. App. 2008)* (both holding that continued at-will employment is not consideration for requiring an at-will employee to sign an agreement to arbitrate).

prevent Mr. Eaton from bringing defenses to the suit filed by CMH or require him to proceed in two forums with possibly inconsistent results. But the anti-waiver provision can be severed. This Court further finds that Mr. Eaton's remaining objections – that only CMH can choose an arbitrator subject to Mr. Eaton's veto and that the contract is one of adhesion – do not render the contract as a whole unconscionable. Accordingly, the Court finds that the contract, absent the anti-waiver clause, is not unconscionable and remands for further proceedings.

## I.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

On April 16, 2009, Mr. Eaton purchased a manufactured home from CMH. The contract between Mr. Eaton and CMH included an arbitration clause, which states:

> **ARBITRATION**: All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by [CMH] with [Mr. Eaton's] consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL**. The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by law, the contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, [CMH] retains an option

3

to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by [CMH] pursuant to this provision.

Both CMH and Mr. Eaton signed the contract. CMH then delivered and installed the manufactured home on Mr. Eaton's property. On September 27, 2012, Mr. Eaton sued CMH in the Lincoln County circuit court, alleging that: (1) as a result of CMH's negligence, the manufactured home had defects and irregularities; (2) CMH fraudulently induced him to sign the contract by representing that he would be purchasing a new 2009 manufactured home, but then informed him that he would be purchasing a 2007 manufactured home that he then purchased only under duress because he feared monetary penalties; (3) CMH breached the contract, which stated that the manufactured home would be free from defects; and (4) CMH engaged in negligent or intentional misrepresentation regarding the defects in the manufactured home.

CMH denied Mr. Eaton's allegations, asserted that Mr. Eaton entered into a binding arbitration agreement with CMH, and moved to dismiss or stay the court action and to compel arbitration. The trial court overruled CMH's motion without opinion. CMH appealed. Following an opinion by the court of appeals, this Court granted

4

transfer.  *Mo. Const. art. V, § 10.*[2]

## II.    STANDARD OF REVIEW

"The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law."  *Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 510 (Mo. banc 2012).* "Missouri contract law applies to determine whether the parties have entered a valid agreement to arbitrate."  *Vincent, 194 S.W.3d at 856.*  Whether the trial court should have granted a motion to compel arbitration is a question of law that this Court reviews de novo. *Id.*

## III.    THE ARBITRATION AGREEMENT BETWEEN MR. EATON AND CMH HOMES IS VALID AS MODIFIED

### A.    General Principles Governing Validity of Agreement to Arbitrate

The Federal Arbitration Act (FAA), *9 U.S.C. § 1 et seq. (2006)*, governs the applicability and enforceability of arbitration agreements in all contracts involving interstate commerce.  The Missouri Uniform Arbitration Act (MUAA), *§ 435.350 et seq.*,[3] governs those Missouri arbitration matters not preempted by the FAA.  The MUAA was "fashioned after the Federal Arbitration Act," and "[t]he FAA and Missouri's Arbitration Act are substantially similar."  *State ex rel. Hewitt v. Kerr, -- S.W.3d --, No.*

---

[2] In the trial-court petition, Mr. Eaton also raised claims against Southern Energy Homes, Inc., and Henry Concrete, LLC.  Neither of these parties is involved in this appeal. Although normally an order that does not dispose of all the parties and claims is not appealable, an order overruling a motion to compel arbitration is immediately appealable under section 435.440.1(1), RSMo 2000.

[3] All statutory references are to RSMo 2000 unless otherwise noted.

*SC93846, slip op. at 6, n.4 , (quoting CPK/Kupper Parker Commc'ns, Inc. v. HGL/L. Gail Hart, 51 S.W.3d 881, 883 (Mo. App. 2001)).*

In determining whether an arbitration agreement is valid under the FAA, this Court is guided by the United States Supreme Court's decision in *AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746, 1750 (2011)*, as interpreted and applied by this Court in *Brewer v. Missouri Title Loans*, *364 S.W.3d 486 (Mo. banc 2012)*, and in *Robinson v. Title Lenders, Inc., 364 S.W.3d 505 (Mo. banc 2012)*.

In *Concepcion* the United States Supreme Court interpreted the provision of the FAA that makes arbitration agreements "valid, irrevocable, and enforceable, *save upon* such grounds as exist at law or in equity for the revocation of any contract," *9 U.S.C. § 2* (emphasis added). *Concepcion* held that this provision allows arbitration agreements "to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, *131 S. Ct. at 1746* (internal quotations omitted).

In *Brewer* and *Robinson*, this Court reaffirmed that *Concepcion* does not diminish a trial court's broad authority to evaluate the validity and enforceability of arbitration agreements when considering whether to grant or overrule a motion to compel arbitration. Rather, this Court held, *Concepcion* "permit[s] state courts to apply state law defenses to the formation of the particular contract at issue." *Brewer, 364 S.W.3d at 492*.

"As such, arbitration agreements are tested through a lens of ordinary state-law principles that govern contracts, and consideration is given to whether the arbitration

6

agreement is improper in light of generally applicable contract defenses." *Robinson, 364 S.W.3d at 515*. This means that a Missouri court can declare an arbitration agreement "unenforceable if a generally applicable contract defense, such as fraud, duress, or unconscionability, applie[s] to concerns raised about the agreement." *Id.*

## B.    *Determining Unconscionability under Missouri Law*

Here, Mr. Eaton alleges that his agreement to arbitrate is unconscionable under Missouri common law. Unconscionability is one of the common law contract defenses that *Concepcion* permits state courts to recognize in determining whether an arbitration clause is valid. *Id.* Therefore, "this Court will analyze the issues in this appeal to determine if, under the factual record presented," Mr. Eaton "has established a[n unconscionability] defense to the formation of the agreement's arbitration clause." *Brewer, 364 S.W.3d at 492.*

Unconscionability is defined as "'an inequality so strong, gross, and manifest that it must be impossible to state it to one with common sense without producing an exclamation at the inequality of it.'" *State of Missouri, Dept. Soc. Servs., Div. of Aging v. Brookside Nursing Ctr., Inc., 50 S.W.3d 273, 277 (Mo. banc 2001) (quoting Restatement (Second) of Contracts § 153 (1981)).* Unconscionability doctrine guards against one-sided contracts, oppression, and unfair surprise. *Brewer, 364 S.W.3d at 492-93.*

> Oppression and unfair surprise can occur during the bargaining process or may become evident later, when a dispute or other circumstances invoke the objectively unreasonable terms. In either case, the unconscionability is linked inextricably with the process of contract formation because it is at formation that a party is required to agree to the objectively unreasonable terms.

7

*Id. at 493*.

As *Brewer* also noted, it is inaccurate to suggest that an agreement or provision must be separately found to be both procedurally and substantively unconscionable to be invalid.[4] *Id. at 492, n.3*. It is more accurate to state that a court will look at both the procedural and substantive aspects of a contract to determine whether, considered together, they make the agreement or provision in question unconscionable. *Accord, id.* *Brewer* identified some of the numerous common factors that bear on unconscionability, including but not limited to:

> [H]igh pressure sales tactics, unreadable fine print, misrepresentation or unequal bargaining positions all indicate deficiencies in the making of a contract. Courts also consider whether the terms of an arbitration agreement are unduly harsh. This is a fact-specific inquiry focusing on whether the contract terms are so one-sided as to oppress or unfairly surprise an innocent party or which reflect an overall imbalance in the rights and obligations imposed by the contract at issue.

*Id. at 489, n.1* (internal citations omitted).

### C. Lack of Mutuality of the Agreement to Arbitrate Does not by Itself Render an Agreement to Arbitrate Unconscionable

Mr. Eaton first argues that the arbitration agreement is invalid and unenforceable because it does not contain mutual agreements to arbitrate. The principle he invokes is known as "mutuality of contract." "Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Aden v.*

---

[4] For example, a contract that provided that a violation would subject the signer to involuntary servitude would be unconscionable because of this substantive provision

8

*Dalton, 107 S.W.2d 1070, 1073 (Mo. 1937)* (internal quotation marks omitted). Applying this principle here, Mr. Eaton argues that the arbitration agreement in his contract with CMH is unconscionable and unenforceable because it obligates him to arbitrate all disputes with CMH, while CMH is not obligated to arbitrate disputes with him "to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement." In effect, Mr. Eaton alleges that this provision means that CMH will never have to arbitrate claims it files because the three listed types of claims are the only types of claims CMH would ever sue on. Unless both parties are required to arbitrate all or comparable claims, Mr. Eaton says that the agreement to arbitrate is not mutual and, so, not supported by adequate consideration, therefore rendering it unconscionable and unenforceable.

In *Baker, 450 S.W.3d at 775-77*, this Court held that an agreement to arbitrate lacks consideration when it is subject to unilateral change and the return promise purportedly made is effectively illusory. But that is not the case here. This case is more like *Vincent, 194 S.W.3d at 855, 859*, in which home buyers sued a home builder for violations of the Missouri Merchandising Practices Act, section 407.010 *et seq*. The home builder's preprinted contracts contained a provision giving the home builder the unilateral right to require any claim arising out of the contract or the home to be decided by binding arbitration. *Id. at 855*. *Vincent* held that this did not invalidate the obligation to arbitrate, explaining that as long as the contract as a whole meets the consideration

---

without regard to whether portions of the contract were procedurally unconscionable considered separately.

requirement, an arbitration clause in the contract will not be invalidated for a lack of mutuality of the obligation to arbitrate:

> "The majority of courts adhere to the Restatement of Contract's view that mutuality is satisfied if there is consideration as to the whole agreement, regardless of whether the included arbitration clause itself was one-sided." *State Law*, 2003 Journal of Dispute Resolution at 485-86. This is the clear result from Missouri law considering that "[t]he usual rules and canons of contract interpretation govern the subsistence and validity of an arbitration clause." *Dunn*, 112 S.W.3d at 428. Furthermore, the terms of a contract should be read as a whole. *Id.* Finally, given Missouri's preference for the arbitrability of disputes, *Id.* at 429, a rule of contract construction that would be an exception to the general rules of contract construction and that would make arbitration less likely should not be erected.

*Id. at 858-59.*

To hold that the agreement is unconscionable solely due to lack of mutuality because CMH, but not Mr. Eaton, is given the option of litigating the issues most important to it in court is inconsistent with the principles set out in *Vincent*. "The consideration of a contract can consist either in a benefit conferred upon the promisor or in a legal detriment to the promisee, which means that the promisee changes his legal position …." *State ex rel. Kansas City v. State Highway Comm'n, 163 S.W.2d 948, 953 (Mo. banc 1942).* Both parties exchanged consideration for the entire contract: Mr. Eaton paid the purchase price and CMH provided Mr. Eaton with the home. Mr. Eaton's mutuality argument, which is based on the fact that CMH can choose to bring some matters in court whereas Mr. Eaton cannot do so, does not persuade this Court to overrule *Vincent.* The lack of mutuality as to the arbitration agreement does not itself invalidate that arbitration agreement.

10

### D. The Contract's Waiver of Defenses Provision Is Unconscionable

Although a lack of mutuality of the obligation to arbitrate does not itself make an arbitration agreement invalid, lack of mutuality still is a relevant factor to be considered in answering the larger question of whether the agreement to arbitrate is unconscionable. Here, the arbitration clause contains another provision – the anti-waiver provision – in addition to the one allowing CMH the unilateral right to decide whether to litigate financial issues regarding the security agreement, monetary damages for breach of contract, and foreclosure in court rather than before an arbitrator. The anti-waiver provision specifically provides that:

> The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by [CMH] pursuant to this provision.

This Court agrees with Mr. Eaton that the arbitration agreement as written is unconscionable when this anti-waiver clause is considered together with the lack of mutuality of the obligation to arbitrate. As Mr. Eaton notes, the fact that the contract requires him to submit all claims to arbitration, including counterclaims, could create the anomalous situation where his affirmative defenses and counterclaims to claims made by CMH in court must proceed in arbitration at the same time as CMH proceeds on those same claims in court.

CMH argues that the anti-waiver clause should be interpreted simply to mean that CMH's decision to bring suit on one or more of the three listed grounds does not waive

11

its right to have unrelated claims determined in arbitration. The contract language does not permit CMH's interpretation of the anti-waiver provision. Under the arbitration agreement's plain language, Mr. Eaton must have all his claims determined by an arbitrator, including counterclaims to CMH's claims related to the enforcement of the security agreement, for monetary damages related to any breach, or for foreclosure of the manufactured home. This means he could be forced to proceed on the same issues in two separate forums, risking inconsistent results, particularly because effectively he could be precluded from asserting his defenses to the claims brought in court.

This Court agrees that this is unconscionable. In fact, at least one Missouri case has invalidated an arbitration agreement that contained a provision that essentially allowed one party to avoid arbitration in a similar manner. In *Greene v. Alliance Automotive, Inc., 435 S.W.3d 646 (Mo. App. 2014)*, the arbitration agreement between a car purchaser and a car dealership: (1) covered "any dispute" between the parties arising out of the contract, related to the purchase and sale or financing of the vehicle, or any resulting transaction; (2) contained a self-help provision; and (3) stated that "no party waives the right to elect arbitration ... by exercising self-help remedies." *Id. at 652-53*. The self-help provision stated:

> Self–Help: Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the Dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

*Id. at 652*. The purchaser defaulted on the contract, and the car dealership exercised self-

12

help by repossessing the purchaser's vehicle. *Id. at 653*.

Although the self-help provision stated self-help would be used "pending final determination of the Dispute by the arbitrator," the car dealership never attempted to arbitrate the dispute. *Id. at 653*. As a result, the purchaser was forced to file suit to contest the repossession of the car. The car dealership moved to compel arbitration. *Id. at 652-53*. *Greene* invalidated the arbitration agreement because:

> [I]f the anti-waiver provision means that [the dealership] can exercise its primary remedy of self-help repossession without waiving arbitration of other disputes, then the agreement itself allows [the dealership] to unilaterally divest itself of the promise to arbitrate. [The dealership] apparently interprets the agreement in this manner as it solved its own dispute with [the purchaser] by repossessing her vehicle, but now relies on the express language of the arbitration agreement to compel [the purchaser] to arbitrate her claims.

*Id. at 654*. *Greene* fails to cite *Vincent*, perhaps because, unlike in *Vincent*, the promise to arbitrate in *Greene* was illusory. That is, the contract promised mutuality of arbitration but then effectively permitted the dealer to proceed in court on all issues including repossession while prohibiting the buyer from opposing replevin or taking any other action in court. In so doing, it allowed the dealer to divest itself of this aspect of the agreed-upon consideration because the dealer could foreclose the buyer's right to review of the provisional repossession simply by failing to file for arbitration. In this regard, *Greene* is like *Baker, 450 S.W.3d at 775-77*, which held that an arbitration provision that permits the seller to unilaterally change the terms of arbitration and unilaterally divests itself of the obligation to arbitrate lacks consideration. *Accord, Frye, 321 S.W.3d at 442* ("A contract that purports to exchange mutual promises will be construed to lack legal

consideration if one party retains the unilateral right to modify or alter the contract as to permit the party to unilaterally divest itself of an obligation to perform the promise initially made").

As with the provision at issue in *Greene*, the anti-waiver provision here goes beyond merely not requiring mutuality. Under the anti-waiver provision, CMH, like the car dealership in *Greene*, has unilaterally divested itself of the arbitration agreement to the extent that it can bring suit on the key financial issues of importance to it. Yet Mr. Eaton is prohibited from defending these claims in court and risks inconsistent adjudications, or the application of res judicata or collateral estoppel, should he try to file an arbitration claim in which he brings up these defenses, even assuming this is possible.[5] This provision of the arbitration agreement, therefore, is unconscionable.

### E.    The Waiver of Defenses Clause Is Severable

Mr. Eaton argues the offending anti-waiver clause renders the entire arbitration agreement unconscionable and cannot be severed from the remainder of the arbitration agreement. This Court disagrees. "Whether a contract is severable … depends on the circumstances of the case and is largely a question of the parties' intent." *Woods v. QC Fin. Servs., Inc., 280 S.W.3d 90, 99 (Mo. App. 2008).* "The absence of a severability clause tends to indicate that a contract is entire and not severable." *Shaffer v. Royal Gate Dodge, Inc., 300 S.W.3d 556, 561 (Mo. App. 2009).* There is no mention of a severability

---

[5] CMH's counsel conceded at oral argument that if Mr. Eaton had defenses, then in that particular case the agreement could be modified to let Mr. Eaton file counterclaims in court rather than proceeding on those counterclaims in arbitration. Mr. Eaton should not

clause in *Greene*. Moreover, in *Greene*, the unconscionability permeated the entire transaction, as the dealer retained the right to use self-help without review by any court or arbitrator. That is not the case here. Furthermore, here the contract does contain a severability clause, which states:

> [I]f any provision of this contract shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the contract.

Generally, this Court will give effect to a severability clause when the clause being severed is not a necessary part of the contract.[6] *Vincent* applied this principle to an arbitration agreement, holding that although provisions of the arbitration agreement allowing an inherently biased individual to serve as arbitrator and placing all costs of arbitration on the individual were unconscionable, these provisions could be severed from the remainder of the agreement. *Vincent, 194 S.W.3d at 859-61*.

This Court recently applied the same principle in *Hewitt*, which dealt with an arbitration clause between an NFL franchise and an employee of that franchise. *Hewitt* held that a provision in the arbitration clause that named the NFL commissioner as the arbitrator was unconscionable because the commissioner was an employee of the NFL

---

have to depend on CMH's willingness to make a case-by-case modification of an obligation to force arbitration that CMH expressly reserved in the arbitration agreement.

[6] *See, e.g., Shaffer, 300 S.W.3d at 561*. (class-action waiver provision was not severable because it was essential to the arbitration agreement); *Swain v. Auto Servs., Inc., 128 S.W.3d 103, 108-09 (Mo. App. 2003)* ((1) remedy provision was severable because it was separate from the opening paragraph of the arbitration clause and not essential to the remainder of the clause, and (2) venue provision was severable and not essential to the arbitration agreement because it was "certainly possible" to conduct arbitration in another venue).

franchise owners, making him inherently biased. *SC93846, slip op. at 19-20*. But, *Hewitt* held, the "unconscionability of the terms does not invalidate the entire agreement to arbitrate." *Id. at 20*. *Hewitt*, instead, severed the arbitrator-selection clause and replaced it with MUAA's default arbitrator-selection term found in section 435.360. *Id.*

Similarly, here, the anti-waiver provision of the arbitration clause is not essential to the agreement to arbitrate. Once it is severed, then, as already noted above, the lack of mutuality of the obligation to arbitrate does not itself render the agreement to arbitrate unconscionable.

### F.    The Other Unconscionability Arguments Are Not Persuasive

In addition, Mr. Eaton argues that the method set out in the contract for selecting an arbitrator is unconscionable because it limits the pool of arbitrators only to those selected by CMH. The arbitration agreement states that all disputes "shall be resolved by mandatory binding arbitration by one arbitrator selected by [CMH] with [Mr. Eaton's] consent." Mr. Eaton compares this to the arbitrator selection method invalidated in *Vincent*. This Court rejects that comparison.

In *Vincent*, a sole arbitrator was prescribed by contract, and that arbitrator was biased. *Vincent* did not suggest that giving the home builder the right to select an arbitrator would have been unconscionable had the chosen arbitrator not been biased. *Vincent, 194 S.W.3d at 859-861*. Similarly, in *Hewitt, SC93846, slip op. at 19-20*, this Court recently held that the clause designating an arbitrator was invalid because the particular arbitrator selected was inherently biased. The Court did not say that both parties must have equal roles in proposing an unbiased arbitrator.

16

Here, unlike in *Vincent* and *Hewitt*, the contract protects against CMH's selection of a biased arbitrator by specifically allowing Mr. Eaton to veto any arbitrator selected. Moreover, CMH cannot simply avoid arbitration by repeatedly proposing unacceptable arbitrators, nor can Mr. Eaton avoid arbitration by repeatedly vetoing proposed arbitrators. As this Court recently noted in *Hewitt*, section 435.360 of the MUAA provides a default method by which the trial court can select an arbitrator.[7] *Hewitt, SC93846, slip op. at 20.* Similarly, here, if the parties are not able to agree on an arbitrator, the court can select one under section 435.360. The arbitrator selection provision of Mr. Eaton's contract, therefore, is not unconscionable.[8]

Finally, Mr. Eaton argues that this Court should hold the arbitration agreement as a whole unconscionable because of the contract's adhesive nature. Under Missouri law,

---

[7] Section 435.360 provides: "If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed. In the absence thereof, or if the agreed method fails or for any reason cannot be followed, or when an arbitrator appointed fails or is unable to act and his successor has not been duly appointed, the court on application of a party shall appoint one or more arbitrators. An arbitrator so appointed has all the powers of one specifically named in the agreement."

[8] *Cf. Lackey v. Green Tree Financial Corp., 498 S.E.2d 898, 904 (S.C. Ct. App. 1998).* Also involving a manufactured home, *Lackey* held that if the buyer rejects the seller's proposed arbitrator, then a court can use default provisions to select an arbitrator, stating:

> Under [a nearly identical to the one here] provision, the [buyers] are protected because the clear language of the agreement allows them to block [the seller's] selection of arbitrators by simply disagreeing with it. Without their agreement, no arbitrator can be selected by [the seller]. Under the default provisions of the FAA, a court then makes the selection of an impartial arbitrator upon application of either party. There is nothing inherently unfair or oppressive about this process.

17

however, the fact that a contract is one of adhesion does not necessarily make it invalid. An adhesion contract is a contract created by the stronger of the contracting parties and offered on a "take this or nothing" basis. *Robin v. Blue Cross Hosp. Servs., Inc., 637 S.W.2d 695, 697 (Mo. banc 1982)*. An adhesion contract's terms "are imposed upon the weaker party who has no choice but to conform," and such terms "unexpectedly or unconscionably limit the obligations and liability of the drafting party." *Id.*

In *Robinson*, this Court emphasized that "post-*Concepcion*, a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally." *Robinson, 364 S.W.3d at 515*. In fact, "[b]ecause the bulk of contracts signed in this country are [pre-printed,] form contracts … any rule automatically invalidating [such] contracts would be completely unworkable." *Swain, 128 S.W.3d at 107* (internal citations and quotation marks omitted).

For these reasons, rather than automatically invalidating contracts simply because they are contracts of adhesion, a court should look at the terms of the contract to determine whether they are rendered unfair by the contracts take-it-or-leave-it nature:

> In determining whether to enforce the terms of a contract of adhesion, courts have looked not only to the take it or leave it nature or the standardized form of the document, but also to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interests affected by the contract.

---

*Id.; see also Harris v. Green Tree Fin. Corp., 183 F.3d 173, 183-84 (3d Cir. 1999)* (holding that an arbitration agreement that contained a provision requiring the arbitrator to be "selected by us with the consent of you" was not unconscionable).

*Woods, 280 S.W.3d at 97.*

Here, as evidence of adhesion, Mr. Eaton refers the Court only to the fact that the obligation to arbitrate is not mutual and the fact that the contract says the arbitration will be governed by the FAA. This Court already has held that the mere lack of mutuality does not render the agreement to arbitrate invalid when, as here, adequate consideration otherwise is provided for the agreement. Similarly, the FAA governs applicability and enforceability of arbitration agreements in all contracts involving interstate commerce, *9 U.S.C. § 2*; *Hewitt, SC93846, slip op. at 5*, while the MUAA governs arbitration matters not preempted by the FAA. *Hewitt, SC93846, slip op. at 6, n.4*. The fact that the contract designates the FAA as governing does not provide a basis to invalidate the contract as a contract of adhesion.[9]

### G.  The Motion to Compel Arbitration Was Not Premature

Finally, Mr. Eaton argues that CMH's motion to compel arbitration was premature because there is another defendant who has not yet answered: Henry Concrete, LLC. Mr. Eaton argues that until Henry Concrete enters an appearance or files an answer, then it is premature to send this case to arbitration.

But, as CMH notes, Mr. Eaton served Henry Concrete in 2012. The time for

---

[9] Moreover, Mr. Eaton has not argued that he attempted to negotiate but those attempts were rejected or that all manufactured home agreements contain similar provisions. *See, e.g., Vincent, 194 S.W.3d at 857*; *Grossman v. Thoroughbred Ford, Inc., 297 S.W.3d 918, 922 (Mo. App. 2009)* (refused to render an arbitration agreement unconscionable on adhesion grounds by looking to similar factors as those in *Vincent*, explaining that the buyer offered no proof that all other area Ford dealers used the same arbitration terms and did not attempt to negotiate or inquire about the contractual terms or contest negotiability). This Court does not address the issue of duress, which was not developed

Henry Concrete to enter an appearance or file an answer long has passed. Yet Mr. Eaton has not taken any steps to obtain a default judgment against Henry Concrete. Furthermore, Henry Concrete is not a party to the arbitration agreement. Although Mr. Eaton speculates in his brief that he "expects that there may be evidence that Henry Concrete was an agent of" CMH, Mr. Eaton did not make any such allegation in his pleadings. Accordingly, this Court agrees with CMH that Henry Concrete's failure to enter an appearance should not preclude arbitration.

## IV.    CONCLUSION

For the reasons set out above, this Court reverses the judgment of the trial court and remands the case.

_____
**LAURA DENVIR STITH, JUDGE**

Russell, C.J., Breckenridge, Fischer, Draper
and Wilson, JJ., concur; Teitelman, J.,
concurs in part and dissents in part.

below but which remains open for consideration on remand.