

# In the Missouri Court of Appeals
## Eastern District
**DIVISION THREE**

| | | |
|---|---|---|
| TD AUTO FINANCE, LLC, | ) | No. ED107438 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | |
| MICHELLE BEDROSIAN, | ) | Honorable Richard M. Stewart |
| | ) | |
| Respondent. | ) | Filed: June 16, 2020 |

In this debt-collection action, TD Auto Finance LLC appeals from the circuit court's order denying its motion to compel arbitration. We reverse and remand.

### Factual and Procedural Background

This case began as a debt collection after Michelle Bedrosian allegedly failed to make required payments on her vehicle. Ms. Bedrosian purchased a vehicle in September 2011 from a Missouri dealership. In so doing, she signed a Retail Installment Sale Contract.[1] That sale contract states the terms of Ms. Bedrosian's required contractual payments and contains other provisions governing the parties' contractual relationship, which are not at issue in this appeal. Ms. Bedrosian also executed a Credit Application to finance the purchase through TD Auto Finance LLC (TDAF). That credit application contains a section titled: "IMPORTANT CONTRACT OF

---

[1] The dealership later assigned its rights and interests in and to the contract to TD Auto Finance LLC.

ARBITRATION." (Capitalized text in original). The arbitration contract sets out ten numbered

paragraphs, including in relevant part:

1. If any of us chooses, any dispute between or among us will be decided by arbitration and not in court.
…
6. Any claim or dispute, whether in contract … (including any dispute over the interpretation, scope, or validity of this Important Contract of Arbitration or the arbitrability of any issue) … which arises out of or relates to this application and Important Contract of Arbitration, any installment sale contract … or any resulting transaction or relationship … shall, at the election of any of us … be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action. Whoever first demands arbitration may choose to proceed under the rules of the American Arbitration Association … or any other arbitration association you choose that is acceptable to us.[2]

Ms. Bedrosian's signature appears twice on the credit application. Ms. Bedrosian does not dispute

that she signed the application.

Over a year later, TDAF alleged that Ms. Bedrosian was in default for failing to make

payment as required by the sale contract.[3] TDAF repossessed and sold the vehicle, and then after

sending notice and a demand, sued Ms. Bedrosian to collect the deficiency, in the amount of

$9,466.18. Ms. Bedrosian filed an answer and counterclaim. TDAF filed a motion to compel

arbitration. Ms. Bedrosian opposed the motion, on three grounds. First, she argued that the

purported arbitration agreement was never formed or concluded because it lacked mutual promises

and thus lacked consideration. Second, Ms. Bedrosian argued that even if the arbitration

agreement had been formed, the agreement was unconscionable and could not be enforced. Lastly,

Ms. Bedrosian argued that even if the agreement was formed and enforceable, TDAF had waived

its right to arbitration by initiating a lawsuit against her.

---

[2] The contract states that for purposes of the arbitration contract the terms "us" or "our" includes the applicant (Ms. Bedrosian) and TD Auto Finance.
[3] Ms. Bedrosian acknowledges in her brief to this Court that she missed payments.

The circuit court held a hearing, then denied TDAF's motion. The circuit court found that a valid agreement to arbitrate did not exist because the arbitration agreement lacked mutuality. The circuit court further noted that even if an arbitration agreement had been formed, the terms were unconscionable and thus unenforceable. The circuit court also found that TDAF had waived its right to arbitrate by initiating suit. TDAF appeals.

## Standard of Review

Whether the circuit court should have granted TDH's motion to compel arbitration is a question of law that this Court will review *de novo*. *Theroff v. Dollar Tree Stores, Inc.*, 591 S.W.3d 432, 436 (Mo. banc 2020). We acknowledge that Ms. Bedrosian disputes whether an arbitration agreement exists in the first instance, and that under similar circumstances the Supreme Court of Missouri recently applied a *Murphy v. Carron* standard of review in its recent decision in *Theroff*.[4] *Theroff*, 591 S.W.3d at 436. However, the dispute in this case is a matter of law and not a factual dispute as in *Theroff*. *Id*. Resolution of the dispute here turns on analysis of the terms of the parties' agreement. *Compare Id.* (outcome turned on circuit court's fact-finding role). Accordingly, a *de novo* standard of review is appropriate. *Id.* (noting that appellate review is *de novo* if no factual dispute exists regarding the existence of an arbitration agreement).

## Points on Appeal

TDAF sets out five points on appeal, alleging the circuit court erred in a variety of ways in denying TDAF's motion to compel arbitration. In general, TDAF argues that all claims addressed by the circuit court were reserved for an arbitrator to decide. TDAF alleges the circuit court erred

---

[4] Under a *Murphy v. Carron* standard of review, this Court will affirm the circuit court's judgment unless no substantial evidence exists to support it, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *Theroff*, 591 S.W.3d at 436. Our disposition here would be the same under this standard of review because the circuit court misapplied the law.

in finding that consideration was lacking and thus that a valid arbitration agreement did not exist. TDAF contends that the mutuality of obligation present in the credit application as a whole, of which the arbitration agreement is a part, supplies adequate consideration, and therefore a valid and enforceable arbitration agreement exists. Next, TDAF contends that the arbitration agreement delegates all disputes to an arbitrator, including threshold issues of arbitrability. TDAF maintains that the delegation is enforceable because Ms. Bedrosian did not specifically challenge the delegation. Finally, TDAF alleges the circuit court erred in finding that the arbitration agreement was unconscionable and that TDAF had waived its right to arbitrate.

We find the following issues relevant and dispositive: the existence of a contract and agreement to arbitrate; the delegation of threshold issues of arbitrability; and the lack of a specific challenge to that delegation.

### Discussion

Arbitration is a method of resolving disputes. *Caldwell v. UniFirst Corp.,* 583 S.W.3d 84, 90 (Mo. App. E.D. 2019). Both the United States Supreme Court and the Supreme Court of Missouri recognize that parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer and White Sales, Inc.,* 139 S.Ct. 524, 527 (2019); *Ellis v. JF Enterprises, LLC*, 482 S.W.3d 417, 420 (Mo. banc 2016). Before referring a dispute to an arbitrator, however, a court must make certain antecedent inquires. *Theroff*, 591 S.W.3d at 437 (principle opinion) and 442 (J. Breckenridge concurring); *Schein*, 139 S.Ct. at 530. In particular, the court must determine whether a valid agreement to arbitrate exists between the parties. *Theroff*, 591 S.W.3d at 437; *Schein*, 139 S.Ct. at 530. Arbitration is a matter of contract. *Theroff*, 591 S.W.3d at 437; *Schein*, 139 S.Ct. at 529. Parties can agree to arbitrate, but there must be a contract in the first instance. *Theroff*, 591 S.W.3d at 439 ("existence of [an]

4

agreement to arbitrate is a prerequisite to compelling arbitration"). Arbitration will only be compelled where a valid arbitration agreement exists and the specific dispute falls within the scope of that agreement. *Caldwell*, 583 S.W.3d at 90; *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 427-28 (Mo. banc 2003). A party can not be compelled to arbitrate a dispute unless they have contractually agreed to be bound by arbitration. *Theroff*, 591 S.W.3d at 440.

## *Existence of Contract & Agreement to Arbitrate?*

We accordingly first address whether the parties formed a valid contract that binds them to arbitrate.

"The essential elements of any contract, including one for arbitration, are "'offer, acceptance, and bargained for consideration.'" *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014)(internal quotation omitted). "Consideration "consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Id*.

Ms. Bedrosian argued that an arbitration agreement never formed because the purported arbitration agreement lacked mutual promises and thus lacked consideration.[5] "Mutuality of contract means that an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." *Baker*, 450 S.W.3d at 781 n.4; *Eaton v. CMH Homes, Inc.,* 461 S.W.3d 426, 433 (Mo. banc 2015). Ms. Bedrosian argued that mutuality was lacking because the purported arbitration agreement obligated her to arbitrate all disputes while TDAH had self-help and court actions available to it, in addition to arbitration. She contended that TDAH's promise to arbitrate is merely illusory. In arguing that consideration was lacking, Ms. Bedrosian focused solely on the arbitration

---

[5] Ms. Bedrosian did not challenge the contractual elements of offer and acceptance.

agreement.  Mutuality, however, is satisfied if there is consideration as to the whole agreement, regardless of whether the included arbitration clause itself was one sided.  *Eaton,* 461 S.W.3d at 434; *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858-9 (Mo. banc 2006).[6]  "[A]s long as the contract as a whole meets the consideration requirement, an arbitration clause in the contract will not be invalidated for a lack of mutuality of the obligation to arbitrate."  *Eaton,* 461 S.W.3d at 434; *Vincent*, 194 S.W.3d at 858-9.

Here, the arbitration agreement is part of a larger integrated agreement, the credit application.  The credit application and the arbitration agreement are continually paginated, and the credit application expressly incorporates the arbitration contract as contained therein.  Further, the credit application states in capitalized, bold, and partial underlining that:

> **IN EXCHANGE FOR THE TIME, EFFORT, AND EXPENSE IN REVIEWING YOUR APPLICATION AND FOR OTHER VALUABLE CONSIDERATION, WHICH IS HEREBY ACKNOWELDGED, YOU AGREE TO ALL OF THE TERMS OF THE <u>IMPORTANT CONTRACT OF ARBITRATION CONTAINED IN THIS APPLICATION</u> AND ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF ITS TERMS.**

Courts look for the existence of consideration, but do not evaluate the adequacy of that consideration.  *Caldwell*, 583 S.W.3d at 91-92; *Soars*, 563 S.W.3d at 115.  Parties are free to make bad deals.  *Id*.  Each party here made promises to the other under the credit application as a whole.  TDAH agreed to review Ms. Bedrosian's application and loan her money to finance the purchase

---

[6] In finding that an agreement to arbitrate did not exist, due to the lack of mutuality/consideration, the circuit court relied on *Greene*, a 2014 decision by our colleagues of the Western District.  *Greene v. All. Auto., Inc.*, 435 S.W.3d 646 (Mo. App. W.D. 2014).  The *Greene* court, in determining if a valid arbitration agreement existed, evaluated consideration by looking solely at the arbitration agreement, which was a part of a larger Retail Installment Contract and Security Agreement.  Since that decision, however, the Supreme Court of Missouri, in *Eaton*, held that courts should look to the contract as a whole in determining whether consideration is adequate rather than looking solely at the consideration given for the agreement to arbitrate.  The Court clarified that a lack of mutuality of the obligation to arbitrate is a relevant factor to consider in determining whether the agreement to arbitrate is unconscionable.  *Eaton*, 461 S.W.3d at 429.  We are constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri.  *Caldwell*, 583 S.W.3d at 89.

of the vehicle. Ms. Bedrosian promised to repay the money and took control of the vehicle. Thus, as the credit application contract as a whole meets the consideration requirement, a contract exists, with an agreement to arbitrate within its written provisions.[7] *Eaton,* 461 S.W.3d at 434.

### *Delegation of Threshold Issues of Arbitrability?*

Having found that the parties formed a valid contract that binds them to arbitrate, we turn then to the question of whether the parties delegated threshold questions of arbitrability to the arbitrator. When a dispute arises, the parties may disagree not only about the merits of the dispute but also about threshold questions such as validity, enforcement, and applicability. *Schein*, 139 S.Ct. at 527. Arbitrability questions can include the claim raised here, that the arbitration agreement is unconscionable and thus not enforceable, as well as the issue of waiver by litigation. *See, e.g., Ford Motor Credit Co., LLC, v. Jones*, 549 S.W.3d 14, 23-24 (Mo. App. W.D. 2018). Like arbitration in general, the question of who decides these threshold arbitrability questions is a matter of contract. *Schein*, 139 S.Ct. at 527; *Latenser v. Tarmac Int'l, Inc.*, 549 S.W.3d 461, 463 (Mo. App. W.D. 2018). Parties may agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying disputes over the merits. *Schein*, 139 S.Ct. at 527; *Theroff*, 591 S.W.3d at 439; *Jones*, 549 S.W.3d at 22. "When evaluating the intention of parties to delegate threshold arbitrability issues to the arbitrator, "courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Theroff*, 591 S.W.3d at 439; *Schein*, 139 S.Ct. at 530.

The arbitration contract between Ms. Bedrosian and TDAF provided that upon election of either party, "any dispute" between Ms. Bedrosian and TDAF, "including any dispute over the

---

[7] The parties do not argue that the dispute between them is outside the scope of the arbitration agreement. Further, the parties' contract states expressly that it "evidences a transaction involving interstate commerce," and that any arbitration was governed by the Federal Arbitration Act (9 U.S.C. 1 et seq).

interpretation, scope, or validity" of the arbitration contract, "or the arbitrability of any issue," would be decided by arbitration and not by a court action. We hold this is clear and unmistakable evidence of the parties' intent to delegate threshold arbitrability issues to an arbitrator.

### *Specific Challenge?*

The Court must enforce the parties' delegation of threshold arbitrability issues save a meritorious direct challenge to the enforceability of that delegation. *Latenser*, 549 S.W.3d at 464; *see also, Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010); *Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114 (Mo. banc 2018). "A direct challenge is one that specifically addresses the delegation provision." *Latenser*, 549 S.W.3d at 464; *Rent-A-Center,* 561 U.S. at 72. A party must levy a specific challenge to the delegation to avoid its application. *Soars*, 563 S.W.3d at 115-16; *Rent-A-Center,* 561 U.S. at 72.

Ms. Bedrosian failed to meet this burden. Ms. Bedrosian's challenge consisted of a single sentence in her 34-page opposition to the motion to compel. Ms. Bedrosian merely stated, in conclusory fashion, without any elaboration or facts to support her challenge, that she "specifically challenges the supposed delegation provision based on lack of offer, acceptance, mutual assent, and consideration." Ms. Bedrosian's challenge to the delegation was identical to her argument against the arbitration agreement as a whole. Challenges such as this have repeatedly been rejected by Missouri courts. *See, e.g.*, *Soars*, 563 S.W.3d at 115-17 (holding no direct challenge where arguments against delegation provision expressly identical to arguments against arbitration agreement as a whole); *Latenser*, 549 S.W.3d at 464 (holding no direct challenge to delegation provision where challenges were to arbitration agreement as a whole); *Pinkerton v. Fahnestock*, 531 S.W.3d 36, 51 (Mo. banc 2017)(holding challenges to arbitration agreement as a whole did not constitute specific challenges to delegation provision). So too, here.

Because Ms. Bedrosian did not direct any specific challenge to the delegation, the parties' agreement to delegate threshold issues to the arbitrator is valid and enforceable. The Court must enforce that delegation. Ms. Bedrosian raised arbitrability issues of unconscionability, and waiver by litigation. Under the parties' agreement, those issues are reserved for the arbitrator. The circuit court should not have ruled on these matters.[8] *See, e.g., Latenser*, 549 S.W.3d at 464; *Jones*, 549 S.W.3d at 22. "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Schein,* 139 S.Ct. at 529. A court may not override the contract. *Id*.

## Disposition

We reverse the circuit court's order and remand the cause to the circuit court for proceedings consistent with this opinion.

_____
Angela Turner Quigless, Judge

Mary K. Hoff, P.J., and
Sherri B. Sullivan, J., concur.

---

[8] Correspondingly, this Court does not address the points on appeal directed to the circuit court's rulings on those matters.